[Nos. 2462 and 2499. Decided April 3, 1897.]

THE BIDDLE PURCHASING COMPANY, *Respondent*, v. THE PORT TOWNSEND STEEL WIRE AND NAIL COMPANY *et al.*, *Appellants*, THE FIRST NATIONAL BANK OF ATHENA, OREGON, *et al.*, *Respondents*, J. W. GRACE & CO., *Intervenor and Appellant.*

INSOLVENT CORPORATIONS — PREFERENCES — MORTGAGES — PLEADING — AMENDMENT.

A mortgage given by an insolvent corporation must be held to be a fraudulent preference, although given for an antecedent loan contracted prior to its insolvency and under an agreement made at the time that a mortgage should be subsequently given, if the loan were not speedily paid, when such agreement does not constitute an enforcible contract.

The refusal of the court to permit an intervenor in an action for

foreclosure to file an amended cross-complaint setting up fraud as to creditors in the execution of mortgages by an insolvent corporation is not prejudicial, when the cause has been tried and determined on that issue, and a receiver appointed for the corporation charged with the duty of administering its property as a trust fund for the benefit of all the creditors according as their rights therein may appear.

A mortgage given by an insolvent corporation for an antecedent debt for the purpose of constituting a voluntary preference to the mortgagee is void as to creditors.

Appeal from Superior Court, Jefferson County.— Hon. W. H. PRITCHARD, Judge. Reversed.

*Morris B. Sachs* (*P. Tillinghast*, of counsel), for intervenor and appellant.

*Trumbull & Trumbull* (*Crowley & Grosscup*, of counsel), *S. A. Plumley* and *R. W. Jennings* (*A. W. Buddress*, of counsel), for respondents.

The opinion of the court was delivered by

REAVIS, J.—A suit was commenced by Cyrus F. Clapp, assignor of the Biddle Purchasing Company, against the Port Townsend Steel Wire and Nail Company, a corporation, to foreclose a mortgage to secure a demand note for $5,000, both the note and mortgage having been executed on the 29th of September, 1894. Plaintiff also made the First National Bank of Athena, Oregon, L. D. Lively, trustee of the same bank, L. D. Lively, personally, and the First National Bank of Port Townsend, defendants, because of liens claimed by the defendants upon the property included in plaintiff's mortgage. The following pleadings were filed in the cause:

Answer and cross-complaint of the First National Bank of Athena, and L. D. Lively, trustee for the same, alleging the execution and delivery of three de-

mand notes dated September 29, 1894, for $5,000, $4,977 and $4,975, respectively, by the Port Townsend Steel Wire and Nail Company, and a mortgage of the same date to secure the three notes upon the same property included in plaintiff's mortgage, with a prayer for foreclosure.

Answer and cross-complaint of L. D. Lively, alleging execution and delivery of demand note dated September 29, 1894, for $7,605.54, by the Port Townsend Steel Wire and Nail Company, and of a mortgage of the same date to secure the note upon the same property included in plaintiff's mortgage, with a prayer for foreclosure.

Answer and cross-complaint of the First National Bank of Port Townsend, alleging a judgment in its favor against the Port Townsend Steel Wire and Nail Company for $4,985.60 and costs, recovered in the superior court of Jefferson county November 10, 1894, upon a debt existing prior to July 1, 1894, and execution thereon returned wholly unsatisfied. This answer and cross-complaint attacked all of the alleged mortgages, as follows:

" (a) As to plaintiff's mortgage, it alleged that on or about July 18, 1894, the Port Townsend Steel Wire and Nail Company executed and delivered to plaintiff its note, payable ninety days after date, for $5,000, and pledged 100 shares of the capital stock of the First National Bank of Athena, Oregon, of the par value of $10,000 for the payment thereof, which stock plaintiff retains; that afterwards and on or about September 29, 1894, said Port Townsend Steel Wire and Nail Company executed the note sued on by plaintiff in lieu of said first note; that no consideration was paid by the plaintiff for said notes to the Port Townsend Steel Wire and Nail Company, but the consideration, if any, was paid to one James M. Lively, who was the owner of said pledged stock.

"(b) That each of the three alleged mortgages was executed by James M. Lively, president, and A. R. McLaughlin, secretary, of the Port Townsend Steel Wire and Nail Company, without authority from said corporation to execute either said mortgages or the notes which they purported to secure.

"(c) That each of said notes and mortgages was without consideration, and was executed and filed for record to hinder, delay and defraud the creditors of the Port Townsend Steel Wire and Nail Company.

"(d) That the property conveyed by said mortgages on the 29th day of September, 1894, and for a long time theretofore, comprised all of the property of the Port Townsend Steel Wire and Nail Company, and was not of value exceeding $20,000.

"(e) That the Port Townsend Steel Wire and Nail Company, on September 29, 1894, and for a long time theretofore, was, and now is, indebted to divers persons, not including the said alleged mortgagees, in sums aggregating more that $25,000.

"(f) That the Port Townsend Steel Wire and Nail Company was, on September 29, 1894, being pushed for said indebtedness; was unable to pay same; was unable to operate its plant and carry on its business for want of funds, and was insolvent.

"(g) That each of said mortgages was voluntary and was given when said corporation was insolvent, and was given, and intended to be given, as a preference to the mortgagee.

"Prayer.　(1) That plaintiff's debt be adjudged the debt of James M. Lively, and that the pledged stock be applied thereon.　(2) That the mortgages be held void.　(3) That the Port Townsend Steel Wire and Nail Company be adjudged an insolvent corporation, and that a receiver be appointed to wind up its affairs for the benefit of all creditors and stockholders."

Answer and cross-complaint of J. W. Grace & Co., by intervention, alleging recovery of a judgment against the Port Townsend Steel Wire and Nail Company and J. M. Lively, in the superior court of Jeffer-

son county, April 6, 1895, for $9,509.63, and costs; and on the same date a second judgment against the same defendants for $407.36; that the judgments are liens upon the mortgaged property of the Port Townsend Steel Wire and Nail Company, included in the mortgage of plaintiff; admits the allegations of the cross-complaint of the First National Bank of Port Townsend, and joins in the same prayer for relief as in the cross-complaint.

Other pleadings by way of reply were filed, but the issues were those raised upon the cross-complaint of the First National Bank of Port Townsend and the intervention of Grace & Co.

1. A trial was had in the court and testimony taken and thereupon the court filed thirty findings of fact. The findings which are deemed material to the decision of the cause here are few. The thirteenth is as follows:

"That the origin of the debt from the defendant, the Port Townsend Steel Wire and Nail Company, to the plaintiff, for which the promissory note described in the preceding finding of fact was executed, was as follows:

"On or about July 18th, 1894, the plaintiff loaned said Port Townsend Steel Wire and Nail Company the sum of $4,700.00 in money, and received from said company, its promissory note for $5,000, payable to plaintiff's order, ninety days after date, without interest until after maturity, and at the same time plaintiff received from J. M. Lively, as collateral security to said note, certain certificates of stock in the First National Bank of Colton, Washington, but the value of said stock, or whose property the same was, does not appear from the evidence. It was agreed between plaintiff and the Port Townsend Steel Wire and Nail Company, at the time of said loan, that said company should execute and deliver to plaintiff a mortgage

upon its plant and property at Port Townsend, as security to said loan, and at said time neither plaintiff nor the company contemplated the company's insolvency, but on the contrary said corporation was regularly carrying on its business, and its officers expected it to continue its business and pay all of its debts. That the mortgage described in the former finding of fact was executed on September 29th, 1894, in fulfillment of and in compliance with said agreement made at the time when plaintiff loaned said money, and that plaintiff still did not know that the corporation was insolvent, or that it contemplated a cessation of its business, and that said mortgage was received by him in good faith, and without any intent to hinder or delay any other creditor; but at said time the officers of the said Port Townsend Steel Wire and Nail Company realized that the said corporation was unable to pay its debts, and although still carrying on its regular business, said officers foresaw that a suspension of business was probable, though it does not appear from the evidence what the value of the company's property was, whether more or less than its liabilities. The giving of the mortgage to plaintiff was not intended by the company's officers as a preference to plaintiff, but simply as a compliance with the agreement made at the time of the loan."

That portion of the above finding in which it is stated that "it was agreed between the plaintiff and the Port Townsend Steel Wire and Nail Company, at the time of said loan, that said company should execute and deliver to plaintiff a mortgage upon its plant and property at Port Townsend, as security to said loan," and further, "that the mortgage described in the former finding of fact was executed on September 29, 1894, in fulfillment of and in compliance with said agreement made at the time when plaintiff loaned said money," is not supported by the testimony in the cause. The plaintiff testified:

"I was in San Francisco on the 1st of July; I met Mr. Lively and he approached me on the subject of a loan for the purpose of buying wire to make nails for a contract which he had with a hardware house in San Francisco.

"*Question:* What year was this ? *Answer:* In 1894; he had a contract for $5,000 worth of nails, and he assured me that he would not require this money for a longer period of time than ninety days, and that the money he would receive for these nails would be paid to me; I partially promised him, and when I came home he came to Seattle and I met him there; he wanted to get the money and I promised to let him have it; and he was to give me security which would be satisfactory, and he was also to have the premises insured in my favor; he didn't get the policies then, claiming that he was getting his insurance from the East where he could get a cheap rate, and instead of giving me the mortgage he gave me four hundred dollars' worth of stock in this bank of Athena, Oregon, and fifteen hundred dollars' worth in the First National Bank of Colton, Washington. I objected, but he said the other would be forthcoming and I gave him a portion of the money at that time."

"Q. What date ?   A. That was July 19; I have my check in my book—

"Q. How much did you give him at that time ?   A. He was to pay me three hundred dollars, and I gave him twenty-seven hundred dollars, making three thousand.

"Q. Did you get the note of the corporation at that time ?   A. Yes; I got the note for ninety days."

"Q. And the note of the corporation for five thousand dollars ?   A. Yes; I gave him a receipt for the balance until he produced the insurance policies. On the 12th of August he returned my receipt with the request that I pay the same as he was hard up."

"Q. And that payment you made then together with the payment before that, was that $2,700?   A. Yes, sir."

"Q. What note did you receive at that time—whose note was it?   A. The original note."

He was asked:

"Did you or did you not receive the mortgage introduced in evidence at the time the note was executed?" and answered:

"No, sir. He was to give me that mortgage, but didn't execute it at that time, but assured me that it would be — if he would not pay me by a certain time he was to give me this security. I got a telegram from my attorney in Port Townsend early in the morning—about 9 o'clock—and he gave me to understand that my $5,000 was in danger; I came down to Port Townsend and was given to understand that they were about to give mortgages to other persons; I went out to the nail works (my attorney went with me) and I got the first mortgage. I surrendered the old note at the time.

"Q. Then you didn't get this mortgage until the 29th day of September, 1894? A. I believe, yes."

Mr. J. M. Lively, president of the Port Townsend Steel Wire and Nail Company, testified as follows:

"Q. Now please state to the court what arrangement you made with Mr. Clapp with reference to the security that he would receive from the company for that loan? A. Mr. Clapp didn't want to make a long loan at that time, and we made arrangements to make a short loan. If it was for a period as long as sixty or ninety days, I forget the exact time, we were to secure him, but if we could pay him back in a few days it would not be necessary to give security; but if we could not do this we would have to give him a mortgage on the entire plant."

There is no agreement shown here which could be enforced for the execution of a mortgage by the defendant corporation to the plaintiff. It was merely understood that if the loan made by the plaintiff to the defendant corporation was not speedily paid it should be secured. But the understanding was in

no view sufficiently definite or certain to constitute a mortgage. With this error noted in a portion of the thirteenth finding also falls the eleventh finding of fact, or, rather, legal conclusion, which is as follows:

"That whatever interest in or lien upon said mortgaged premises any of the defendants herein have is subsequent to and subject to the mortgage of plaintiff, described in the foregoing finding of fact, which said mortgage to plaintiff is a first lien upon all of said property."

The 23d, 26th, 27th and 28th findings of fact are as follows:

"23. The property included in mortgages was all of the property of any kind belonging to the Port Townsend Steel Wire and Nail Company, September 29, 1894, and for a long time prior thereto."

"26. That on the 29th day of September, 1894, the said defendant, the Port Townsend Steel Wire and Nail Company, was, and for a long time prior thereto had been seriously embarrassed in the operation of its mills and foundry, and in carrying on its business, by reason of its not being able to pay its debts at maturity, and by reason of its not having the money necessary to pay its laborers necessary for the operation of its plant, nor to buy material for said purpose. That on said 29th day of September, 1894, and for some time prior thereto, it had been unable to operate its works and plant, and they were idle."

"27. That on the 29th day of September, 1894, and for a long time prior thereto, the said defendant, the Port Townsend Steel Wire and Nail Company, was, and ever since has been unable to pay its debts in the ordinary or usual course of trade, and on said date was, and ever since has been and is now insolvent."

"28. That on the 29th day of September, 1894, James M. Lively, the president of the said defendant corporation, the Port Townsend Steel Wire and Nail Company, and A. R. McLaughlin, its secretary, and all of

44—16 WASH.

the other officers of said company, knew that the said corporation was insolvent, and that it was necessary to wind up its affairs, and knew these facts at the time they executed and delivered to said L. D. Lively, trustee, and L. D. Lively, the mortgages set forth hereinbefore; and that said mortgages were given by the officers of the said corporation to L. D. Lively, and L. D. Lively, as trustee, for the purpose of preferring them over the other creditors of the said corporation, and for the purpose of hindering and delaying the creditors of the said corporation in the collection of their debts."

The court had also, prior to the trial, appointed a receiver, who had taken possession of all the property of the Port Townsend Steel Wire and Nail Company. At the trial the testimony tending to show the insolvency of the corporation on the 29th of September, 1894, and prior thereto, was introduced by the defendant, the First National Bank of Port Townsend. Objection was made to the introduction of testimony on the part of the intervenor, Grace & Co. The court announced orally that it was *disposed* to sustain this objection, but appears to have made no clear ruling upon the question. Subsequent to the trial and before the findings of fact and conclusions of law were filed, the Biddle Purchasing Company was substituted as party in the action, in place of Cyrus F. Clapp, James K. Lynch was substituted as defendant in place of the First National Bank of Athena, and the First National Bank of Athena was substituted in place of the defendant and cross-complainant, the First National Bank of Port Townsend. Thereupon Grace & Co. moved for leave to file an amended pleading in which substantially it was endeavored to set up the same facts that were set forth in the answer and cross-complaint originally filed by the First National Bank of

Port Townsend. The court denied the motion for such amendment by Grace & Co., to which exception was taken, and upon the pleadings in the cause, and particularly that of Grace and Co., a large portion of the argument has been made to this court by counsel for respondents. But, in the view here taken of what is decisive of the cause and the rights of the parties before us, many of the questions which are argued upon the pleadings are immaterial. It would have been only fair to Grace & Co., in view of the various substitutions that were made between the trial and the decision of the cause, and particularly in view of the fact that the First National Bank of Port Townsend disappeared from the case and its interests were thereafter represented by the First National Bank of Athena, an adverse party in interest to Grace & Co., that the latter should have been permitted to file the proposed amendment. But we do not deem such amendment was necessary at that stage of the cause. Grace & Co. had been allowed to appear and join with the First National Bank of Port Townsend. The issues were made between that bank and the plaintiff and the other parties to the cause, and had been heard and determined, and the court evidently considered Grace & Co. as parties standing in the same relation which they assumed at the beginning until the conclusion of the case. Therefore Grace & Co. were not injured by the refusal of their proposed amendment.

The defendant corporation, the Port Townsend Steel Wire and Nail Company, was insolvent. Under the proper order of the court, all its property was in the custody of the receiver. All creditors of the corporation were authorized to appear and prove their claims and share alike in the proceeds of the property of the insolvent corporation. Hence, all the refine-

ment indulged in by counsel upon the proper pleading, and the nature of the pleadings, in a foreclosure suit is inapplicable. Any sufficient statement of the nature and amount of the debt due to Grace & Co. from the insolvent corporation was good. It is the duty of the court, under the circumstances of this case, when it has found the insolvency of the corporation, of its own motion to direct that all creditors come in and prove their claims against the corporation.

In *Thompson v. Huron Lumber Co.*, 4 Wash. 600 (30 Pac. 741), it was said at page 607:

"'The receiver, having been thus appointed, represented the corporation and all of its creditors. He was a trustee for both. It was his duty, under the orders of the court, to take proof of all claims presented to him; to recommend the allowance of those which he deemed just, and the disallowance of such as were improper. It was not necessary that any claim thus presented should be in the form of a judgment, or that there should be technical interventions. If claims were disputed by the receiver, the court had full power to decide the points at issue, calling in a jury if necessary. Any creditor, having proved his claim, would have the right to contest the claim of any other creditor, if the receiver should fail or refuse to do so in a proper case. In a word, this was a fund in court, the beneficiaries of which should receive their respective shares as expeditiously as the nature of the property would permit, and the principles governing the proceedings are substantially those enacted into statutes of insolvency in the states and into bankruptcy acts by the United States.''

2. At the time the Clapp mortgage for $5,000 was executed, the mortgagee had knowledge of the execution of the two other mortgages on the same day and of the intentions of the officers of the Port Townsend

Steel Wire and Nail Company to prefer his note. The knowledge of his attorney, Mr. Coleman, must be imputed to him. The mortgage itself was clearly a preference by an insolvent corporation of one of its creditors. It was executed as security for an antecedent debt. Such a preference cannot be maintained. It was said in *Thompson v. Huron Lumber Co., supra,* at page 604:

" But we cannot lose sight of the settled rule concerning the property of insolvent corporations, viz., that it is a trust fund for creditors, wherein there is a difference between property of a corporation and that of a natural person. Without enlarging upon a discussion of the subject, we note a remarkably clear and forcible case in *Rouse v. Merchants' National Bank,* 46 Ohio St. 493 (22 N. E. Rep. 293), which sustains the position we take. There is an additional reason, however, in this state, viz., that our courts are expressly authorized by statute to appoint receivers of corporations which are insolvent, or are in imminent danger of insolvency. Code Proc., § 326, subd. 5. The purpose in thus placing insolvent corporations in the possession of the courts can only be that their assets may be distributed ratably to creditors. A general assignment without preferences does not defeat this purpose, but, if the estate of a corporation comes into the court or into the hands of the assignee burdened with preferences, there is an end of equal distribution, and the object of the law is defeated."

Again, in *Conover v. Hull,* 10 Wash. 673 (39 Pac. 166, 45 Am. St. Rep. 810), the question of a preference, by an insolvent corporation, of its creditors came before the court and was carefully considered and elaborately discussed. The court says, at page 675, referring to *Thompson v. Huron Lumber Co., supra:*

" We however held, on the legal proposition, that a voluntary preference by an insolvent corporation, was

void; and that principle is the essentially distinguishing feature between the responsibilities and rights of a corporation and a private individual. A further investigation of the subject and of the authorities contents us with the rule announced in that case; and we are satisfied that it can be amply sustained, not only by authority but by the clearest principles of right reasoning. To begin with, our statute law recognizes a distinction between the remedies of creditors as applied to their dealings with corporations, by providing for the appointment of receivers to take charge of the property of corporations under certain circumstances and conditions; and of course, after the receiver is appointed, the property is in the custody of the court, and the funds will be equitably distributed among the creditors."

The question may now be considered as settled in this state, and does not require further discussion here.

The cause is reversed because of the preference awarded to the plaintiff's mortgage and remanded to the superior court for further proceedings in conformity to this opinion.

SCOTT, C. J., and ANDERS, DUNBAR and GORDON, JJ., concur.