[No. 3209. Decided February 9, 1899.]

THE STATE OF WASHINGTON, *on the Relation of Welling-ton Strohl, as Receiver,* v. THE SUPERIOR COURT OF KING COUNTY *et al.*

MANDAMUS TO COURT—JURISDICTION IN INSOLVENCY CASES—BANK-
RUPTCY LAW—APPOINTMENT OF RECEIVERS.

Mandamus will lie to compel a superior court to assume jurisdiction of an action by a receiver of an insolvent corporation, which the court had declined on the ground that the enactment of the federal bankruptcy law of July 1, 1898, had suspended the jurisdiction of state courts in insolvency cases, where there has been no proceeding in bankruptcy instituted respecting the matter in controversy.

Under the laws of this state authorizing the courts to appoint receivers of corporations which are insolvent, or in imminent danger of insolvency, with a view to rendering the insolvent estate a trust fund for the benefit of all creditors, ratably and equally, the courts retain jurisdiction over such corporations until they may be adjudged bankrupt under the law of congress, by the proper tribunal.

*Original Application for Mandamus.*

*Donworth & Howe,* and *Ira Bronson,* for relator.

*Strudwick & Peters,* and *Bausman, Kelleher & Emory,* for respondents.

The opinion of the court was delivered by

REAVIS, J.—The facts set forth in the application are substantially that about the 19th of December, 1898, the relator was appointed receiver of the Skookum Box & Lum-

35—20 WASH

ber Company, a corporation created and existing under
the laws of this state; that the appointment was made in a
case wherein the Seattle Hardware Company, a corpora-
tion, was plaintiff, and the Skookum Box & Lumber Com-
pany was defendant; that as the duly qualified and acting
receiver of the Skookum Box & Lumber Company, on the
27th day of December, 1898, the relator instituted an
action in the superior court of King county against the
Seattle National Bank, a corporation, and the sheriff of
King county and certain other defendants.   The object of
the action was to vacate a certain judgment of foreclosure
rendered by the superior court of King county, in favor
of the Seattle National Bank and against the Skookum
Box & Lumber Company, which judgment foreclosed a
chattel mortgage executed by the Skookum Box & Lumber
Company to the Seattle National Bank, and to have the
mortgage adjudged void.   The allegations of the com-
plaint show that the mortgage was given by the Skookum
Box & Lumber Company to secure a pre-existing debt, and,
at the time it was executed, the Skookum Box & Lumber
Company was insolvent, in the sense that it was wholly
unable to meet its obligations as they matured in the ordi-
nary course of business, and that the intent of the mort-
gage was to constitute the Seattle National Bank a pre-
ferred creditor of the Skookum Box & Lumber Company.
It was further alleged that the property covered by the
mortgage, if sold at forced sale, would be insufficient to
pay the indebtedness, and there would be no property re-
maining of the Skookum Box & Lumber Company out of
which the general creditors of the corporation could receive
payment; and the further allegation was made that an-
other defendant had obtained a judgment against the
Skookum Box & Lumber Company and had caused its
property to be levied upon.   The complaint prayed for an
injunction against the defendants restraining them from

selling the property of the Skookum Box & Lumber Company, and that the mortgage of the Seattle National Bank be declared void, and the possession of the property of the lumber company be delivered to the receiver, and for general equitable relief. The defendant Seattle National Bank appeared and answered that the Skookum Box & Lumber Company was a corporation organized under the laws of this state engaged in manufacturing, trading and mercantile pursuits, and, at all times in the complaint mentioned, owed debts to the amount of a thousand dollars, and that the purpose and scope of the receivership proceedings in which the relator was appointed receiver was to declare the Skookum Box & Lumber Company an insolvent corporation and to wind up and distribute all its property to its creditors. It appears from the return of the judge of the superior court to the alternative writ that the action came on for hearing on the 17th of January, 1899, and that the answer of the Seattle National Bank in said cause was deemed a plea to the jurisdiction of the court, and that the court held such plea sufficient and dismissed the cause for want of jurisdiction. No proceedings in bankruptcy under the law of the United States which took effect on the first day of July, 1898, have ever been instituted, and all the proceedings in the action dismissed took place since the first of July, 1898.

1.   Relator appears to have no plain, speedy and adequate remedy by appeal, and, if the superior court had jurisdiction, mandamus is the proper remedy here to require that court to proceed and try the cause. The single question presented is, Did the enactment of the federal bankruptcy law July 1, 1898, suspend the right of the state court to appoint a receiver for an insolvent corporation under the laws of this state? It is conceded that the enactment of the general bankruptcy law by Congress superseded and suspended all state insolvency laws. While

the industry of the learned counsel upon each side in this controversy in the citation of authorities is commendable, yet we are unable to find one precisely in line with the facts here, and there is apparently some conflict in the expressions of different courts.   First noticing authorities presented by counsel for the respondent:

*In re Merchants Insurance Co.*, Fed. Cas. No. 9441, an insurance company was declared insolvent and a receiver appointed by the state court.   Thereafter a petition was filed in the federal court to declare the corporation bank-. rupt and take possession of its assets, and the petition was allowed and the court observed:

" It also seems clear to us that in so far as a state law attempts to administer on the effects of an insolvent debtor and distribute them among creditors, it is to all intents and purposes an insolvent law, although it may not author-ize a discharge of the debtor from further liability on its debts."

It was also held in this case and *In re Washington Marine Insurance Co.*, Fed. Cas. No. 17,246, that the acqui-escence of the defendant in the appointment of the receiver was an act of bankruptcy.   The case *In re Independent Insurance Co.*, Fed. Cas. No. 7017, arose under the bank-ruptcy act of 1867.   It was there observed, citing from *Griswold v. Pratt*, 9 Metc. (Mass.) 23:

" When the power is exercised by Congress, and a bank-rupt law is in force, it does suspend all state insolvent laws applicable to like cases; and this effect follows the enact-ment of the bankrupt law, and does not require the actual institution of proceedings in bankruptcy to produce such result."

But the Massachusetts case goes further than any of the other authorities.   *In re Reynolds*, Fed. Cas. No. 11,723, by BRADLEY, Judge, the exclusive supremacy of the bank-ruptcy courts is announced, whether the state statute is in

the nature of an insolvency or a bankruptcy act. Black on Bankruptcy, p. 128, observes:

"Several cases are found in the reports of the inferior federal courts wherein it is held that, although an insolvent corporation is in the hands of a receiver appointed by a state court, this will not deprive the national courts of jurisdiction in proceedings against the corporation under the bankruptcy law; for, it is said, any other construction would entirely defeat the operation of that law."

Some of the cases heretofore noticed are cited, and the author continues:   "But this view is contradicted by a considerable body of authorities."

Of relator's citations:   The case of *Boese v. King,* 108 U. S. 379 (2 Sup. Ct. 765), was where an assignment was made under the state insolvency law of New Jersey, entitled "An act to secure to creditors an equal and just division of the estates of debtors who convey to assignees for the benefit of creditors."   The act provided, among other things, that every conveyance or assignment by a debtor of his estate, real or personal or both, in trust, to an assignee for the benefit of creditors, shall be made for their equal benefit in proportion to their several demands to the net amount that shall come to the hands of the assignee for distribution; and all preferences of one creditor over another, or whereby one shall be first paid or have a greater proportion in respect to his claim than another, shall be deemed fraudulent and void.   The assignees under such assignment converted the assets of the assignor into money and deposited it, for convenience of distribution, in a bank in New York city.   No proceedings in bankruptcy were ever taken against the assignor.   Creditors in New York of the assignor procured judgment in the supreme court of that state, and endeavored to secure satisfaction thereof from the fund deposited by the assignees in the bank.   The supreme court of New York held that the assignment in

New Jersey was void because of the operation of the general bankruptcy law, but on writ of error to the supreme court of the United States from the court of appeals it was said:

" The supreme court of New York ruled that the statute of New Jersey was, in its nature and effect, a bankrupt law, and the power conferred upon Congress to establish a uniform system of bankruptcy, having been exercised by the passage of the act of 1867, the latter act wholly suspended the operation of the local statute as to all cases within its purview; consequently, it was held, the assignment was not valid for any purpose.  The court of appeals, recognizing the paramount nature of the Bankrupt Act of Congress, and assuming that the 14th section of the New Jersey statute, relating to the effect upon the claims of creditors who exhibit their demands for a dividend, was inconsistent with that act, and therefore inoperative, adjudged that other portions of the local statute providing for the equal distribution of the debtor's property among his creditors, and regulating the general conduct of the assignee, were not inconsistent with nor were they necessarily suspended by the act of 1867; further, that the New Jersey statute did not create the right to make voluntary assignments for the equal benefit of creditors, but was only restrictive of a previously existing right and imposed, for the benefit of creditors, salutary safeguards around its exercise; consequently, had the whole of the New Jersey statute been superseded, the right of a debtor to make a voluntary assignment would still have existed.  The assignment, as a transfer of the debtor's property, was, therefore, upheld as in harmony with the general object and purposes of the Bankrupt Act, unassailable by reason merely of the fact that some of the provisions of the local statute may have been suspended by the act of 1867."

" We are of opinion that, except as against proceedings instituted under the Bankrupt Act for the purpose of securing the administration of the property in the bankruptcy court, the assignment, having been made without intent to hinder, delay or defraud creditors, was valid, for at least the purpose of securing an equal distribution

of the estate among all the creditors of Locke, in proportion to their several demands."

The following authorities also seem to be analogous: *Watson v. Citizens' Savings Bank,* Fed. Cas. No. 17,279; *In re National Life Ins. Co.,* Fed. Cas. No. 10,046; *Smith v. Buchanan,* Fed. Cas. No. 13,016; *Watson v. Citizens' Savings Bank,* 5 S. C. 159; *Eyster v. Gaff,* 91 U. S. 521; *Buchanan v. Smith,* 16 Wall. 277; Collier, Bankruptcy, pp. 19 and 20; *Reed v. Taylor,* 32 Iowa, 209 (7 Am. Rep. 180).

2. The test of insolvency under the federal bankruptcy law of 1898 is thus stated:

"A person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed or removed with intent to defraud, hinder or delay his creditors, shall not at a fair valuation be sufficient in amount to pay his debts."

It will thus be seen that the allegations of the complaint in the suit for the receiver in the case at bar would not conclusively make a case under the federal bankruptcy law. It is true that the fact of a fraudulent preference would be a single act of bankruptcy under that law. The statutes of this state (Code Proc., § 326, subd. 5, Bal. Code, § 5456) expressly authorize the court to appoint receivers of corporations which are insolvent or are in *imminent* danger of insolvency; and this court has uniformly affirmed the doctrine that the assets of such a corporation are always a trust fund to be administered in equity for the benefit of the creditors ratably and equally. *Thompson v. Huron Lumber Co.,* 4 Wash. 600 (30 Pac. 741); *Conover v. Hull,* 10 Wash. 673 (39 Pac. 166, 45 Am. St. Rep. 810); *Biddle Purchasing Co. v. Port Townsend Steel, etc., Co.,* 16 Wash. 681 (48 Pac. 407).

It would seem that a corporation created under the laws

of this state should be subject to the chancery jurisdiction of the courts, and that creditors of such corporations should have their ordinary remedies under existing state laws until such corporation is adjudged a bankrupt under the law of Congress and by the proper tribunal.    Unquestionably, upon such adjudication the power of the state court to further proceed ceases.

The writ will issue directing the superior court to proceed with the cause in consonance with this opinion.

GORDON, C. J., and ANDERS, DUNBAR and FULLERTON, JJ., concur.