[No. 20310. Department Two. February 25, 1927.]

## R. C. SMITH, *as Receiver, Appellant,* v. NATIONAL BANK OF COMMERCE OF SEATTLE, *Respondent.*[1]

[1] CORPORATIONS (208) — INSOLVENCY — PREFERENCE — ADVANCES — TRUST FUND DOCTRINE. There was no unlawful preference or violation of the trust fund doctrine by a bank's crediting balances on a checking account in part payment of loans made to the depositor, where the bank, from time to time, made advances to a going concern (in fact insolvent but not to the knowledge of the bank), under a general loan and collateral agreement, whereby the money loaned on the faith and credit of the lien went to swell the assets of the corporation, to the advantage of the creditors.

Appeal from a judgment of the superior court for King county, Sessions, J., entered May 7, 1926, upon findings in favor of the defendant, in an action by a receiver to recover assets of an insolvent corporation, tried to the court. Affirmed.

*Jay C. Allen* and *Frank S. Griffith,* for appellant.

*Kerr, McCord & Ivey,* for respondent.

TOLMAN, J.—Appellant sued to recover what he alleged to be preferential payments made by an insolvent corporation to the respondent. From a judgment on the merits dismissing his action, he has appealed.

The story may be well told by quoting the trial court's findings of fact, which are terse and to the point.

[1] Reported in 253 Pac. 644.

"That, for several years previous to the time of the appointment of the said plaintiff as receiver for the said company, the said company had been borrowing moneys from the defendant bank, with which to carry on its business, and on January 9, 1924, the said company borrowed from the defendant bank the sum of $9,859.46, which said sum was placed to the credit of the said company along with other deposits and checked against in the usual course of business.

"That, at the time of the making of said loan, the said company executed and delivered to the defendant bank its promissory note, attached to which promissory note was the bank's general loan and collateral agreement, a copy of which said note is attached to the defendant's answer and the original of which is on file as an exhibit in this cause.

"That thereafter the defendant made several loans to the said company, and some of the notes taken by the said bank as evidence of said loans did not have attached to them a collateral agreement, and on the 11th day of February, 1924, an additional general loan and collateral agreement was executed by the said company and delivered to the said bank, which general loan and collateral agreement was identical in terms with that attached to the said note for $9,859.46.

"That thereafter and on the 27th day of February, 1924, the said company borrowed from the said defendant an additional sum of $2,000, and at the time of borrowing this sum it pledged with said bank under the said bank's general loan and collateral agreement an assignment of an account which this company had against the Irving Hartley Logging Company, which account was in the sum of $2,200.

"That this latter note in the sum of $2,200 matured on the 8th day of March, 1924, and there was on deposit with the defendant bank at that time sufficient funds to pay the same, and the same was charged to the account of the company, and the note was marked paid and surrendered.

"That on the 10th day of March, 1924, the said larger note matured, and at the close of business on the 10th day of March, 1924, there remained in the account of

this company something over $3,000, and $3,000 of the balance was applied by the bank on this larger note and the said sum charged to the company's account.

"That on the 14th. day of March, 1924, the net proceeds of the said Irving Hartley Logging Company account were received by the bank and amounted to $2,199.65, and this sum was likewise applied on the said larger of the two notes, leaving a balance due on the said note of about $4,500.

"That the said Service Trading Company was, up to the time of the appointment of a receiver, a going concern and quite actively in business, and meeting its obligations as they matured; that, during the month of February, 1924, its deposits and withdrawals with the said defendant aggregated considerably over the sum of $100,000.

"That the said company had been insolvent since the 1st day of January, 1924, but the same was not known to the officers of the defendant bank until the 14th day of March, 1924, at which time a receiver was appointed for the said company.

"That all of the moneys deposited with the said defendant bank and all of the moneys that were applied by the said bank on the said notes were so deposited in due course of business and without any intention on the part of either of the parties to create a balance in the said account for the purpose of preferring the said bank as against any other creditors of the said Service Trading Company."

A study of the evidence convinces us that these findings are all well supported, so that under our familiar rule we must follow them. Therefore, but little further attention need be given to the facts.

[1] The general loan and collateral agreement referred to in the findings is most sweeping in its provisions and its terms amply warrant everything which the respondent did or attempted to do. No reason is suggested by the appellant why the terms of that instrument are not absolutely binding upon all concerned here, except only that it is in violation of the trust fund

doctrine which has been applied by this court to the assets of insolvent corporations in a long line of cases, beginning with *Thompson v. Huron Lumber Co.,* 4 Wash. 600, 30 Pac. 741, 31 Pac. 25, and continuing down to *Woods v. Metropolitan Nat. Bank,* 126 Wash. 346, 218 Pac. 266. But that rule, like every rule, has its exceptions.

Respondent loaned this money to a corporation which was then actually insolvent (not knowing that fact, it is true, but the question of knowledge is immaterial, as we have several times held), and the money loaned went to swell the assets of the corporation. The loans were made upon the faith and credit of the lien created by the general loan and collateral agreement, and when the balance in the checking account was taken in payment and reduction of the notes, the respondent took back only a part of what it had theretofore contributed. In other words, the trial court found that the corporation was insolvent on January 1, 1924. Its then assets were a trust fund, and if a receiver had then been appointed they would have been distributed accordingly. Respondent afterwards by its loans increased the assets, and later, but still before insolvency proceedings were commenced, took back in repayment a part of that increase. How could the other and general creditors be injured? The presumption must be that they were benefited by the transaction taken as a whole.

The recent case of *Terhune v. Weise,* 132 Wash. 208, 231 Pac. 954, clearly exemplifies this exception to the rule, is exactly in point and is controlling in this case.

An argument is advanced upon the supposed equities of those who made possible the deposit by the corporation of the fund out of which respondent sequestered the payments. The answer is that the bank knew

nothing of these matters and the corporation might, and perhaps should, if it recognized such equities, have made a special deposit for the benefit of those who had contributed toward the securing of the fund.

On the authority of the *Terhune* case, the judgment is affirmed.

MACKINTOSH, C. J., BRIDGES, ASKREN, and PARKER, JJ., concur.