[No. 5244. Decided March 15, 1905.]

THE TACOMA LEDGER COMPANY, *Respondent,* v. THE WESTERN HOME BUILDING ASSOCIATION *et al., Defend ants,* THE CALIFORNIA, OREGON & WASHINGTON HOMEBUILDER'S ASSOCIATION, *Appellant.*[1]

CORPORATIONS—FRAUDULENT CONVEYANCES—SELLING OUT TO ANOTHER CORPORATION. The assets of an insolvent corporation being a trust fund for the benefit of creditors, one corporation cannot dispose of all its stock, assets and business to another corporation, itself ceasing to do business, and neither corporation making provision for the payment of the debts of the selling corporation.

SAME—DIVIDING CAPITAL STOCK AMONG STOCKHOLDERS—ASSETS SOLD TO ANOTHER CORPORATION. An arrangement whereby all the property and business of a corporation is to be sold and turned over to another corporation in consideration of shares of the capital stock of the purchasing corporation, issued to and for the benefit of the stockholders in the selling corporation, which agreed to cease to do business, is in violation of Bal. Code, § 4265,

1Reported in 79 Pac. 992.

making it unlawful for the trustees to divide, withdraw, or in any manner pay to stockholders any part of the capital stock of a corporation, and is fraudulent as to creditors.

SAME—BONA FIDE PURCHASER—NOTICE OF DEBTS. In such a case if the selling corporation was in failing circumstances at the time of the transfer, the fact that the purchaser was unaware of the indebtedness is immaterial.

Appeal from a judgment of the superior court for King county, Tallman, J., entered November 21, 1903, upon the pleadings, on motion of the plaintiff, in an action to set aside a fraudulent conveyance. Affirmed.

*Frederick R. Burch,* for appellant.

*J. B. Alexander,* for respondent.

DUNBAR, J.—The complaint alleges that the plaintiff is a domestic corporation; that the defendant The Western Home Building Association is a like corporation; that the defendant The California, Oregon & Washington Homebuilder's Association is a foreign corporation, organized and existing under the laws of the state of California, with like powers as the Western Home Building Association; that a judgment was recovered by plaintiff against the defendant the Western Home Building Association, in the sum of $187, with $16.80 costs, and alleges the entry of said judgment; that the Western Home Building Association was, at the time of the entry of said judgment, and for some time before, in a failing and insolvent condition, which fact was known to the trustees of said corporation; that, on or about the date of the entry of said judgment, namely, the 25th day of March, 1902, stockholders of the Western Home Building Association, with the consent and assistance of the trustees and all the officers thereof, made and entered into a fraudulent and illegal agreement with the California, Oregon & Washington Homebuilder's Association, whereby

all the capital stock of the Western Home Building Association, and all the properties and assets of every kind, should be sold and turned over to the California, Oregon & Washington Homebuilder's Association, for the consideration of 40,000 shares of the capital stock of the California, Oregon & Washington Homebuilder's Association, which said stock was to be issued to, and for the benefit of, the stockholders and officers and trustees of the Western Home Building Association, the trustees being named in the complaint; and that it was agreed that the Western Home Building Association should cease to do business in the state of Washington, and alleges the consummation of this plan, and the turning over of all of the properties of the Western Home Building Association to the California, Oregon & Washington Homebuilder's Association, naming the assets, and alleging that the California, Oregon & Washington Homebuilder's Association has since been receiving and appropriating to its own use and benefit the said money so received, and refuses to apply the same to the satisfaction of the judgment above referred to; that the California, Oregon & Washington Homebuilder's Association knew of the insolvency of the Western Home Building Association, at the time of this transaction, and had notice of the indebtedness of the Western Home Building Association.

The appellant's demurrer to this complaint was overruled, and the appellant then answered, and denied any knowledge of the insolvency of the Western Home Building Association, denied entering into any fraudulent and illegal plan with said association, and denied any knowledge of the indebtedness of said association, to plaintiff, and denied generally all of the allegations of the complaint; and affirmatively pleaded that the alleged board of directors in the Western Home Building Association

ceased to be such directors on or about the )th day of March, 1902; that on or about the 24th day of March, 1902, the Western Home Building Associatio 1, agreeing through its authorized officers and board of tr 1stees, and with full acquiescence and authority of all its stockholders, proposed to the California, Oregon & Washington Homebuilder's Association that they purchas( the business conducted by the said Western Home Bi ilding Association, and that they did purchase the enti 'e business of said association, being all its property and issets, and the entire capital stock of the said corporatio 1. At the time of said purchase the Western Home Buil ling Association represented to the California, Oregon & Washington Homebuilder's Association that the said Wes:ern Home Building Association was thoroughly solvent, and that there were no debts of any kind existing agains; the same save and except the current expenses of the saic month of March, 1902, amounting in all to about $250 and that the said California, Oregon & Washington F omebuilder's Association paid to said Western Home Building Association the sum of $250 for the express purpose of liquidating the current expense account. This is a sufficient recital of the pleadings, we think, to bring the material issues under discussion. On these pleadings plaintiff moved for judgment, which said motion was gra nted, and judgment entered thereon, and this appeal is taken from said judgment by the California, Oregon & Washington Homebuilder's Association.

It is assigned that the court erred: (1) in (verruling the demurrer to the complaint; (2) in granting t 1e motion for judgment on the pleadings; and (3) in pronouncing judgment thereon. These assignments all rais( the single question of the right of one corporation to (.ispose of

all its capital stock and assets to another coropration, transferring its business to the purchasing corporation, itself ceasing to do business, neither corporation making provision for the payment of the debts of the selling corporation. This court, in a line of cases commencing with *Thompson v. Huron Lumber Co.,* 4 Wash. 600, 30 Pac. 741, 31 Pac. 25, and in an unbroken line of authority down to the present time has held that the assets and property of an insolvent corporation are a trust fund for the benefit of creditors, and that no transfer or subterfuge would be countenanced which prevented an equal distribution of such fund between creditors of the corporation. In addition to this, the law, in an earnest attempt to protect creditors of such corporations, has provided in Bal. Code, § 4265:

"It shall not be lawful for the trustees to make any dividend except from the net profits arising from the business of the corporation, nor divide, withdraw, or in any way pay to the stockholders, or any of them, any part of the capital stock of the company, nor to reduce the capital stock of the company unless in the manner prescribed in this chapter, or the articles of incorporation or by-laws; and in case of any violation of the provisions of this section, the trustees under whose administration the same may have happened, except those who may have caused their dissent therefrom to be entered at large on the minutes of the board of directors at the time, or were not present when the same did happen, shall, in their individual or private capacities, be jointly or severally liable to the corporation, and the creditors thereof in the event of its dissolution, to the full amount so divided, or reduced, or paid out: Provided, That this section shall not be construed to prevent a division and distribution of the capital stock of the company, which shall remain after the payment of all its debts upon the dissolution of the corporation or the expiration of its charter."

This statute has not been construed by this court, but it seems to us that its object was to prevent such transactions as the one which was presented in defense by the appellant in this case. A similar statute, however, has been construed in the state of California in *Martin v. Zellerbach,* 38 Cal. 300, 99 Am. Dec. 365, where it was held that any arrangement which would have the effect to withdraw the capital of an incorporated company and turn it over to the stockholders, except in the manner provided by law, was in violation of that provision of the statute which forbids the trustees to divide, withdraw, or in any way pay to the stockholders, or any of them any part of the capital stock of the company, and was void as to any creditors of the corporation, either prior or subsequent, who had no notice of the arrangement at the time of giving the credit. The transaction in that case, as far as the principles involved are concerned, is identical with the case at bar. In speaking upon this subject the court said:

"The policy which dictated that provision is obvious. Persons dealing with corporations do so upon the faith that its property and all its assets, of whatsoever nature, are vested in trustees or managers, to be held by them as a fund which shall be primarily liable for its debts. For although the stockholders, and in some events the trustees, may be individually liable to creditors, it is the property and capital of the corporation to which creditors chiefly look, and which give it credit in the community. To protect the rights of creditors and to guard against improvident or fraudulent conduct on the part of trustees and stockholders, the Legislature has wisely provided . . . This language leaves no room for construction or doubtful interpretation. It is direct, explicit and unmistakable. But it was not intended to interfere with the plenary power of the trustees over the legitimate business of the corpora-

tion. They may manage, control and alienate its property in the regular course of its business, but they cannot devote the proceeds, beyond the surplus *profits,* to the stockholders, either directly or indirectly, until after all its debts are paid."

The same doctrine was reaffirmed in *Higgins v. California Petroleum etc. Co.,* 122 Cal. 373, 55 Pac. 155, and in *Schaake v. Eagle Automatic Can Co.,* 135 Cal. 472, 63 Pac. 1025. If the corporation was in failing circumstances at the time of the transfer, the answer of the defendant that it was not aware of the indebtedness will not avail it. For, with or without that knowledge on the part of the appellant, the property of the corporation is still a trust fund for the benefit of creditors. Attempts of this kind to avoid the payment of debts by consolidation, or by changing the name of corporations, have been often before the courts, and by all modern decisions have been forcibly condemned; and it is held a fraud on the creditors for the stockholders to withdraw the assets of the corporation leaving debts of the corporation unpaid. In the case of *Hibernia Ins. Co. v. St. Louis etc. Transp. Co.,* 13 Fed. 516, the following excerpt from the opinion of the court is very much in point. The court says:

"The purchaser knew that it was buying all the property of the seller, and that, by the transaction, the latter was being deprived of the means and power of meeting any of its outstanding obligations. The fair inference from the transaction is that the old company was about to be dissolved and cease to be. . . . By the transfer, the creditors of the old company were deprived of the means of enforcing their claims. . . . It has received, it is true, paid up stock in the new company, but that has doubtless been disposed of; or . . . it may at any moment be transferred. Equity will not compel the creditor of a corporation to waive his right to enforce his claim

against the visible and tangible property of the corpora-
tion, and to run the chances of following and recovering
the value of shares of stock. . . . . A distinction with
respect to transactions of this character exists between a
corporation and a natural person. . . . 'The thing
which we pronounce unconscionable is an arrangement by
which one corporation takes from another all its property,
deprives it of the means of paying its debts, enables it to
dissolve its corporate existence, and place itself practical-
ly beyond the reach of creditors, and this without assum-
ing its liabilities."

We think under all the authorities the judgment was
correct, and it is therefore affirmed.

MOUNT, C. J., FULLERTON, and HADLEY, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., took no part.