## In re MONTAGUE.

### (District Court, E. D. Virginia.   July 5, 1905.)

BANKRUPTCY—VOIDABLE PREFERENCE—FAILURE TO RECORD BILL OF SALE.

A bankrupt a year or more prior to his bankruptcy made a bill of sale to his father, to whom he was indebted, for a steam launch to be delivered about three months thereafter. It was so delivered, but the bill of sale was not recorded until shortly before the petition in voluntary bankruptcy was filed, when the father knew it was in contemplation and when the bankrupt was insolvent. *Held*, that under Code Va. 1904, § 2465, which provides that a bill of sale for property, possession of which is allowed to remain with the grantor, shall be void as to creditors "until and except from the time" it is recorded, the bill of sale did not take effect as a transfer until it was recorded, and that such transfer constituted a voidable preference under Bankr. Act 1898, § 60a and b (July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]), as amended in 1903 (Act Feb. 5, 1903, c. 487, 32 Stat. 799 [U. S. Comp. St. Supp. 1905, p. 689]).

In Bankruptcy.   On report of special commissioner.

The following is the report of Special Master, Claude M. Dean:

On July 8, 1902, H. St. A. Montague, the bankrupt, purchased from L. W. Harris a certain steam launch, known as the "Ruby," for the sum of $320.80, and paid for the same on that day as shown by the bill of sale filed before me and marked, as "Exhibit H. M. No. 3." At the time of this sale the launch was in the Westhampton Lake, in Henrico county, Va. By bill of sale, dated July 12, 1902, but not acknowledged until February 2, 1904, and recorded on that day in the clerk's office of King William county, Va., H. St. A. Montague, the bankrupt, sold the said launch to his father, J. W. Montague, for the sum of $153.41 (being the amount he was indebted to his father), and for the further consideration that the launch was to remain in his possession and he was to have the use of the same until October 1, 1902. The launch was used by him as a pleasure boat for hire on the Reservoir Lake, to which place it was removed from Westhampton Lake during the early part of August, 1902. J. W. Montague, the vendee, took possession of the launch during the early part of October, 1902, and had the same removed to his landing on the Pamunkey river, in King William county, Va., and the launch has so remained in his possession ever since, being used as a pleasure boat for hunting parties, and for the purposes of hauling freight. At the time of the sale, delivery, and removal of the boat from the Reservoir Lake, H. St. A. Montague resided in Richmond, Va., but soon thereafter returned to his father's home to live, and the launch has since been used and run by him and another man.

H. St. A. Montague, the bankrupt, on July 28, 1902, indorsed certain notes given by one W. W. Edwards to L. W. Harris. The notes not being paid when they became due, the said Harris sued the said Montague in the spring of 1904 on these notes, and on April 8, 1904, recovered judgment against him for the sum of $251. The bill of sale, dated July 12, 1902, from H. St. A. Montague to J. W. Montague, was acknowledged and recorded in the clerk's office of King William county, Va., on February 2, 1904.

The bill of sale is as follows: "Palls, Va., July 12, 1902. I have this day sold to J. W. Montague, the steam launch known as 'Ruby' for the sum of one hundred and fifty three $41/_{100}$ dollars, the launch to be delivered Oct. 1st, 1902. Received payment in full. H. St. A. Montague."

J. W. Montague testified that his son had stated to him before he had the bill of sale recorded that, if Harris's suit went against him (the bankrupt), he would go into bankruptcy. And H. St. A. Montague testified to the same effect.

On April 20, 1904, H. St. A. Montague filed his petition in bankruptcy.

The law applicable: Code Va. 1904, § 2465: "Every such contract in writing * * * and every bill of sale or contract for the sale of goods and

chattels when the possession is allowed to remain with the grantor (and any such bill of sale or contract shall be in writing and signed by the vendor), shall be void as to subsequent purchasers for valuable consideration without notice, and creditors until and except from the time that it is duly admitted to record in the county or corporation wherein the property embraced in such contract, deed, or bill of sale may be. * * * Section 60, cls. "a," "b," Bankr. Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], as amended by act Feb. 5, 1903, c. 487, § 13. 32 Stat. 799 [U. S. Comp. St. Supp. 1905, p. 689], printed in Loveland on Bankruptcy (2d. Ed.), p. 1157.

Had not the bill of sale of July 12, 1902, contained the clause that the possession of the launch was to remain with the vendor until October 1, 1902. I would have been inclined to have held that the transaction was a bona fide one; that the delivery of the launch during the month of October, 1902, to the vendee was equivalent to the recordation of the bill of sale, and that vendee had a good and valid title to the launch. But as the bill of sale discloses upon its face that the launch was to remain in the possession of the vendor until October 1, 1902, and the vendee, for reasons known to himself, not having recorded the same until February 2, 1904, I am constrained to hold that under section 2465 of the Code of Virginia the title to the launch did not pass to the vendee until the date of the recordation of the bill of sale, viz., February 2, 1904.

Though a preference of creditors by a transfer or assignment of property by an insolvent may sometimes be unjust to the other creditors, it was not forbidden by the common law, and is not forbidden by many of the states. Yet, it is, however, made invalid by the bankruptcy act provided three things occur, viz.: (1) At the time of the transfer the bankrupt must be insolvent. (2) The transfer must be made within four months before the filing of the petition. (3) The person to be benefited must have had reasonable cause to believe that it was intended thereby to give a preference. Loveland on Bankruptcy (2d Ed.) 387, and cases cited. But in order that a transfer shall constitute a preference which may be avoided, whatever the manner of transferring it may be, and in order to set aside a sale on the ground that it is a preference, four elements are necessary and four things must occur, viz.: (1) The transfer must be made from an insolvent person to a creditor. (2) The transfer must have been made within four months before filing a petition in bankruptcy, or after filing the petition and before adjudication. (3) The person receiving it or to be benefited thereby, or his agent acting therein, must have had reasonable cause to believe that it was intended thereby to give a preference. (4) The effect of such transfer must be to enable any one of his creditors to obtain a greater percentage than any other of such creditors of the same class. Loveland on Bankruptcy (2d Ed.) pp. 572, 589; Sebring v. Wellington, 6 Am. Bankr. Rep. 671, 71 N. Y. Supp. 788; In re Dundas, 7 Am. Bankr. Rep. 129, 111 Fed. 500. If any of these elements are wanting, the preference cannot be set aside, if otherwise valid under the state law.

Now, have the four elements and necessary things occurred to constitute a preference? And, if so, have the three necessary things occurred to invalidate the transfer of the launch under the bankrupt law? I am clearly of the opinion that they have; for it is virtually conceded that the bankrupt was insolvent on the date of the recordation of the bill of sale, and, if it were denied, his schedule of debts filed in his petition would show that he was. And holding, as I do, that the title to the launch did not pass to the vendee until February 2, 1904, the transfer certainly took place within four months of the time the bankrupt filed his petition. The testimony of J. W. Montague, the vendee, on page 10, and that of the bankrupt, on pages 12 and 13, of the testimony taken before me, in which it is stated that the bankrupt informed his father that if the Harris suit went against him he would have to go into bankruptcy, clearly discloses to my mind that the vendee had a reasonable cause to believe that the said transfer was intended and did give him a preference, and it surely cannot be denied that the transfer of the launch certainly enabled J. W. Montague, one of the bankrupt's creditors, to obtain

a greater percentage of his debt than any other of such creditors of the same class.

Such being my conclusions, I am led to the opinion that the trustee may recover the launch or its value from the vendee, J. W. Montague, and that this court can, under section 60b of the bankrupt act, as amended, order such a recovery by the trustee. Loveland on Bankruptcy (2d Ed.) p. 607. Collier on Bankruptcy (4th Ed.) p. 251. In reaching the above opinion, I have gone over all the testimony of the witnesses very carefully, given the arguments of the respective counsel the utmost consideration, and examined into many authorities.

Isaac Diggs, for L. W. Harris, creditor, and the trustee.

Ordway Puller, for the bankrupt and J. W. Montague, the vendee.

WADDILL, District Judge. The ruling of the special master as set forth in the foregoing report is approved, and his opinion is adopted as that of the court. Let decree be entered accordingly.

<hr>

## MILLS v. CITY OF CHICAGO et al.

(Circuit Court, N. D. Illinois, N. D. February 23, 1906.)

COURTS—JURISDICTION OF FEDERAL COURTS—STOCKHOLDER'S SUIT.

To establish the claim that a suit brought in a federal court by a nonresident stockholder in a local corporation against the corporation and a city to enjoin the enforcement of an ordinance of the city is collusive and a fraud on the jurisdiction of the court, it is not sufficient that the company would be benefited by the success of the complainant, which is the theory upon which all suits are brought, nor that its officers express a desire for his success, nor that his counsel represented the company in a prior suit brought by it in the same behalf; but an agreement between complainant and the company, pursuant to which the suit was brought, must be shown either directly or inferentially.

In Equity. On final hearing.

For former opinion, see 127 Fed. 731.

William D. Guthrie and I. K. Boyesen, for complainant.

James Hamilton Lewis, Corp. Counsel, Henry M. Ashton, and David K. Tone, for defendant city of Chicago.

James F. Meagher, for defendant People's Gas Light & Coke Company.

GROSSCUP, Circuit Judge. The bill is by a citizen of California, a stockholder of the People's Gas Light & Coke Company, suing in behalf of himself and other stockholders of the company similarly situated, against the city of Chicago and the gas company, citizens of Illinois; the object of the bill being to restrain the city from enforcing an ordinance forbidding manufacturers of gas from demanding or collecting from consumers of gas, more than seventy-five cents per thousand cubic feet, and attaching a penalty of from twenty-five to two hundred dollars for each violation thereof. The bill alleges that the ordinance is invalid, in that it impairs the obligation of a contract between the city and the company; and in that the council was without power from the state to pass a rate regulation ordinance. The bill also charges that notwithstanding the demand of complain-