## FURBER v. WILLIAMS-FLOWER CO. et al.

An insolvent corporation holds its assets as a trust fund for the benefit of its creditors, and a transfer of its property to one person with an understanding that certain creditors shall be preferred is fraudulent, without reference to want of knowledge of the preferred creditors of the character of the transfer and the conditions of the corporation.

(Opinion filed, April 2, 1907.)

Appeal from Circuit Court, Lawrence County. Hon. W. G. Rice, Judge.

Action by George M. Furber against the Williams-Flower Company and others. From a judgment for defendants, plaintiff appeals. Modified.

Samuel C. Polley, for appelant. Martin &Mason, for respondents.

FULLER, P. J. This action by a judgment creditor of the Williams-Flower Company, on behalf of himself and others, to set aside a transfer and subsequent mortgage of corporate property and to secure the appointment of a receiver, was instituted after an execution had been issued and returned nulla bona. Whether the chattel mortgage executed and delivered by the transferee, S. A. Flower, to the respondent, First National Bank of Deadwood, is valid as to the creditors of the company, is the ultimate question to be determined on this appeal.

It is shown by the unchallenged findings of fact, upon which all the parties rely, that the Williams-Flower Company was organized as a domestic corporation during the month of October, 1903, and was unsuccessfully engaged in mercantile business in the city of Deadwood from that time until the 23d day of January, 1905,

when it transferred all its property and effects to S. A. Flower, with the mutual understanding that local creditors should be paid in preference to a large number of nonresident persons and corporations holding overdue claims against the company. Moreover, it was the avowed intention of both parties to the transaction to defraud the plaintiff and other creditors similarly situated. Clayton T. Flower was secretary and treasurer of the corporation, and for several months prior to the transfer his father, the respondent S. A. Flower, managed the mercantile business and was in full charge of the store, while Clayton was constantly employed by the respondent bank in the capacity of collector and bookkeeper. For several months prior to transferring all its property and effects to S. A. Flower, the company was wholly unable to meet its obligations at maturity or pay any of its debts, either from its own means or in any other manner. During all this time the various creditors on behalf of whom this action was commenced had been diligently pressing the corporation and its manager, S. A. Flower, for the payment of their claims, and D. A. McPherson, cashier of the bank having entire charge of its business, actually knew that the Williams-Flower Company was greatly embarrassed financially and unable to pay any of the numerous drafts made through his bank by such creditors. S. A. Flower was wholly without means, and an apparent promise to secure a debt of $1,067 owing to the bank by such corporation and the execution of his unsecured promissory notes for $2,300 were the only consideration given for the entire corporate property. Being thus without financial resources or credit, S. A. Flower executed his promissory note, payable to the respondent bank, in the sum of $1,067, secured by chattel mortgage on the entire stock of merchandise, and as a part of the transaction drew his check on the bank for that amount in favor of the company and delivered the same to its secretary and treasurer, Clayton T. Flower, who presented it to the bank and caused the debt of the company to be canceled on the day the transfer was made.

While the trial court concluded, from the foregoing and other probative facts too numerous to justify recitation, that the transaction so far as it related to the transfer of property was fraudu-

lent and void as to all the creditors of the Williams-Flower Company, and for that reason should be canceled, set aside, and held for naught, it was adjudged that the note, secured by chattel mortgage, executed and delivered to the bank by S. A. Flower, while acting as an involuntary trustee for the benefit of such creditors, was a valid obligation, to be paid and satisfied in full in preference to every other claim. When the fraudulent transfer was made the property of the corporation was "valued at about $3,000," but its debts, long past due at that time, aggregated $2,933.81, independently of accrued interest to which the creditors were lawfully entitled. By a letter written February 9, 1905, in the name of the Williams-Flower Company, over the signature of its former secretary, Clayton T. Flower, who continued to act in the capacity of bookkeeper and collector for the bank, all nonresident creditors were advised of the inability of the defunct corporation to meet any of its debts, though long past due, and for that reason a sale of the corporate assets had been made in bulk on deferred quarterly payments for the purpose of saving something out of the venture. Although the inventory and report of the receiver appointed in the action is not conclusive as to the actual value of the property owned by the corporation, it is of some significance that its liabilities exceeded the net assets about $1,738, and the findings of fact clearly disclose insolvency at the time of the attempted transfer and execution of the mortgage. When by means of such fraudulent transaction the corporation went out of business and ceased to exist, there was no bill of sale, inventory of stock, change of possession, or payment of consideration; and the court finds as a matter of fact that on that date the corporation was, and for several months prior thereto had been, wholly unable to pay anything to its numerous creditors, each of whom had made drafts thereon through the respondent bank, and such drafts had been returned invariably for the sole reason that nothing could be collected. The court further found "that on the said 23d day of January, A. D. 1905, and for several months prior thereto, said Williams-Flower Company was unable to pay its debts from its own means as they became due, or to pay them at all from any source."

From the foregoing and other facts and circumstances disclosed by the record it is reasonably clear that the corporate property could not be sold for money sufficient to meet the liabilities of the company, and a chronic condition of insolvency had long existed in a sense so unrestricted that it need not be determined whether inability to pay in the usual course of business at maturity would be controlling as to insolvency in the case of a corporation. For the persuasive reason that the Williams-Flower Company was insolvent, and that S. A. Flower acquired nothing by the attempted fraudulent transfer, a receiver was appointed, with the usual powers to take all the corporate property and effects into his possession, to be disposed of under the direction of the court. The corporation having ceased to be a going concern, and its assets being clearly insufficient to pay all its creditors, the conclusion that the mortgage was valid and payable in full must have been predicated on the assumption that an insolvent corporation may lawfully prefer creditors, and thus the only question remaining for consideration is presented.

Consistent with the doctrine that the assets of an insolvent corporation constitue a trust fund for he equal benefit of all its creditors, without preference for any, certain judgments confessed in favor of persons loaning an insolvent corporation money with which to purchase shares in itself were adjudged void as to creditors in the case of Adams & Westlake Co. v. Deyette, 5 S. D. 418, 59 N. W. 214, 49 Am. St. Rep. 887, where we quote with approval from a Wisconsin case as follows: "The law applicable to the question is well settled. The corporation, being only a fictitious body, can act only through agents, called 'directors.' The directors manage the business for the stockholders. For this purpose they hold and manage the business and corporate property as trustees for the stockholders. But when insolvency of the corporation happens, then the duty and function of the directors are changed. Then they become trustees for the creditors of the corporation of all the corporate property and rights. They are trustees for all the creditors, and are bound to preserve and administer all the corporate property in the interest, impartially, of all the corporate creditors. Being trustees for all the creditors, they are incapable of making

any preference of their own claims, or of giving preference to the claims of any creditor. ) As between the creditors, equality is equity." Ford v. Plankinton Bank, 87 Wis. 363, 58 N. W. 766.

While the facts serving as a basis for the decision of this court in the case above noticed were not the same as here · presented, the governing principle is identical, and the reason for invoking the rule that an insolvent corporation has no authority to prefer creditors is not impaired by the fact that the company attempted to transfer its property for the purpose of having S. A. Flower give a preference to the bank by executing the mortgage sought to be set aside. (The trust-fund doctrine, as applied to corporations, emanates from the fact that their creditors are confined to corporate assets, while natural persons, though insolvent, may and often do subsequently ·acquire property and discharge all their previous obligations. . So far as the rights and remedies of creditors are concerned, insolvency destroys a corporation, and the necessity for the equal distribution of its assets among such creditors is suggested by public policy and the plainest principles of equity.

As the case of Hardware Company v. Manufacturing Company, 86 Tex. 143, 24 S. W. 16, 22 L. R. A. 802, is similar to this and conforms to the prevailing rule, we quote a supporting authority from the opinion as follows: "Approving the principles announced in Wood v. Dunmer, 3 Mason (U. S.) 311, Fed. Cas. No. 17,944, Sanger v. Upton, 91 U. S. 56, and Curran v. State of Arkansas, 15 How. (U. S.) 312, and quoting with approval from the opinion, it was held 'that when a corporation for profit * * * becomes insolvent, and ceases to carry on its business or further pursue the purposes of its creation, the corporate property constitutes a trust fund for the equal benefit of the corporate creditors, in proportion to the amounts of their respective claims; and that it cannot then, by pledge or mortgage of the property to some of its creditors as security for antecedent debts, without other consideration, create valid preferences in their behalf over the other creditors, or over an assignment ·thereafter made for the benefit of creditors.' " In the case of Appleton v. Turnbull, 84 Me. 72, 24 Atl. 592, the court said: "It is too firmly established in the present day to be questioned that the capital stock of a corporation is a trust fund for the payment of

its debts. It is a substitute for the personal liability of the individual members of private copartnerships, and those who deal with the corporation have a right to rely upon its capital stock for their security. Unpaid stock is as much a part of the assets of the corporation as the money that has been paid in upon it. Creditors have the same right to insist upon its payment as upon the payment of any other debt due the corporation, so far as it is necessary to the satisfaction of debts due from a corporation. During the existence of the life of the corporation it is a trust to be managed for the benefit of the stockholders; but in the event of its dissolution, or insolvency, it becomes a trust fund for the benefit of its creditors. If, in such case, the assets are not sufficient to pay all its debts in full, each creditor is equitably entitled to receive a ratable share of the assets which remain."

Judge Thompson speaks of the fallacy of upholding an insolvent corporation in the preference of creditors as follows: "It allows it to hand over its property to certain favored creditors, and then go out of existence and leave the rest of its creditors utterly remediless. The writer wishes to weigh his words carefully, and not to speak disrespectfully of the judicial courts; but he feels that he does not characterize this doctrine in the language which it deserves unless he calls it an infamous doctrine, which is not supported by any underlying principle of justice. It gives added weight to the calamity which the public suffers through the fact of nearly every form of industry passing into the hands of limited liability corporations." 5 Thompson on Corporations, 5122. Chancellor Kent, in 2, Com. 307, says: "The rule of the common law has in fact become obsolete. It has never been applied to insolvent or dissolved moneyed corporations in England. The sound doctrine now is, as shown by statutes and judicial decisions, that the capital and debts of banking and other moneyed corporations constitute a trust fund and pledge for the payment of creditors and stockholders, and a court of equity will lay hold of the fund, and see that it be duly collected and applied." The following cases are directly in point: Sanger v. Upton, 91 U. S. 56; Biddle Purchasing Co. v. Steel Wire & Nail Co., 16 Wash. 681, 48 Pac. 407; Sawyer v. Hoag, 17 Wall. (U. S.) 610.

(Being convinced of the soundness of this doctrine, and feeling satisfied that our former decisions to the effect that insolvency converts the assets of a corporation into a trust fund for the equal benefit of creditors, it follows that the preference given the bank is fraudulent in law, and its lack of knowledge as to the character of the transfer and exact condition of the Williams-Flower Company when the mortgage was executed is wholly immaterial. ) Tacoma Ledger Co. v. Home Building Association, 37 Wash. 467, 79 Pac. 992.

The case is therefore remanded, with the direction that the judgment appealed from be modified in conformity with the views herein expressed; and, as thus modified, such judgment is affirmed, with costs in favor of appellant.

HANEY, J. Regarding the sale to S. A. Flower and the execution of the mortgage to the bank as constituting a preference by the Williams-Flower Company of one of its creditors, I would hold it was permitted by the statutes of this state to give such preference, were I not precluded from doing so by the former decision of this court, wherein it was expressly declared (Kellam, J., dissenting) that, "'when insolvency occurs, a corporation has no authority to prefer creditors." Adams & Westlake Co. v. Deyette, 8 S. D. 119, 59 N. W. 214.

For these reasons I concur in the conclusion that the judgment appealed from should be modified.