[No. 10942. Department Two. May 7, 1913.]

J. D. BENNER, *as Trustee in Bankruptcy etc., Respondent,* v. SCANDINAVIAN AMERICAN BANK, *Appellant.*[1]

SHIPPING—SALES—RECORDING CONVEYANCES—FAILING TO RECORD—EFFECT—RIGHTS OF CREDITORS. An unrecorded bill of sale of a ship is invalid as against a creditor of the vendor seeking to sequester property to satisfy the obligations due him, in view of U. S. Rev. St. § 4192, providing that no bill of sale or conveyance of any vessel shall be valid against any person other than the mortgagor and persons having actual notice thereof, unless the same is recorded in the office of the collector of customs in which the vessel is registered or enrolled; the act being remedial and to be liberally construed.

BANKRUPTCY — TRUSTEE—POWERS—FRAUDULENT CONVEYANCES. A trustee in bankruptcy represents the creditors of the bankrupt, and can avoid any transfer or conveyance which they could have avoided, and has plenary power to take all necessary steps to subject the bankrupt's property to satisfaction of his obligations.

[1]Reported in 131 Pac. 1149.

BANKRUPTCY—PREFERENCES—TIME OF TRANSFER—FAILURE TO RE-
CORD BILL OF SALE. Under § 60 of the bankruptcy act, providing that
a person shall be deemed to have been given a preference if, being
insolvent, he has, within four months of filing the petition, made
any transfer of his property, and that such period of four months
shall not expire until after the date of recording the transfer if
such recording is required, a bill of sale of a vessel executed by the
bankrupt, but not recorded as required by law more than four
months prior to the filing of the petition, is an unlawful preference.

CORPORATIONS—INSOLVENCY—PREFERENCE — TRANSFERS—VALIDITY.
A conveyance by a domestic corporation, after insolvency preferring
creditors, is void, as its property is a trust fund for all its creditors.

BANKRUPTCY—PREFERENCE—UNRECORDED BILL OF SALE. Under § 67
of the bankruptcy act, providing that claims shall not be liens
against the estate if they would not be valid against claims of
creditors for want of record or for other reasons, a transfer by the
bankrupt is void where it was not recorded within ten days after its
execution, as required by Rem. & Bal. Code, § 5291; or where, being
a mortgage of personalty, it was not recorded in the manner required
by Id., § 3660.

Appeal from a judgment of the superior court for Pierce
county, Easterday, J., entered May 16, 1912, upon find-
ings in favor of the plaintiff, after a trial on the merits be-
fore the court without a jury, in an action by a trustee in
bankruptcy to recover the value of property transferred to
creditors. Affirmed.

*J. A. Sorley* and *Williamson & Freeman,* for appellant.
*Raymond J. McMillan,* for respondent.

FULLERTON, J.—This action was instituted by J. D. Ben-
ner, as trustee in bankruptcy of the Gawley Foundry & Ma-
chine Works, against The Scandinavian American Bank, to
recover the value of a coasting vessel which the machinery
company had transferred to the bank as security for a debt
owing by it to the bank. The action was based on the
ground that the transfer was void as against the creditors of
the machinery company because made within four months of
the filing of the petition in bankruptcy against it, thereby
creating a preference in favor of the bank forbidden by the

bankruptcy act. The trustee recovered in the court below, and the bank has appealed.

The bank and the machinery company were both domestic corporations doing business at Tacoma, Washington. The relation between the bank and Joseph Gawley, the manager and chief owner of the machinery company, were more or less intimate. Gawley owned some fifty shares of the capital stock of the bank, and the banking business of the machinery company, as well as Gawley's private banking business, was done with the bank. In its earlier years, the machinery company was a prosperous concern, its business was large, and the bank extended to it an extensive credit; its indebtedness to the bank at times running as high as $70,000. The machinery company's business was somewhat varied, and it became the owner and operator of a coasting steam vessel called "The Advance," which was duly enrolled in the name of Joseph Gawley, under the laws of the United States, at the office of the collector of customs for the Puget Sound district.

In the earlier part of the year of 1909, the machinery company, for some reason not explained in the record, withdrew its banking account from the appellant bank and began banking elsewhere. At this time the company owed the appellant bank some $15,000, which was evidenced by promissory notes made by the machinery company to the bank and endorsed by Joseph Gawley individually. The bank was not satisfied with the indebtedness as it stood, and solicited the company, through Gawley, for some satisfactory settlement of the account. After considerable negotiation, a settlement was had on May 6, 1909. At that time Joseph Gawley turned over to the bank, or to one of its directors, in payment of the machinery company's account, the capital stock of the bank which he held individually, for the sum of $5,500, which is conceded to be its then fair cash value; paid to the bank $1,800 in cash; and gave the machinery company's demand note for the balance, $7,700, which note he promised

to secure by a chattel mortgage or a bill of sale on the coasting vessel before mentioned. On July 9, 1909, pursuant to the agreement, a bill of sale was executed by Joseph Gawley to the bank, purporting to convey to it absolutely the coasting vessel for the sum of $5,000. It was understood, however, by both parties to the instrument that the instrument was a mortgage to secure the machinery company's note to the bank. The bill of sale was, by the agreement of the parties, withheld from record, and the machinery company continued as a going concern. Shortly thereafter, Joseph Gawley, as the representative of the machinery company, made a written statement of its assets and liabilities, in which he included the coasting vessel as part of the machinery company's assets, but made no mention of the bill of sale. The statement showed the machinery company to be in a flourishing condition, and on the strength thereof and other representations, the machinery company was enabled to borrow from one banking firm the sum of $15,000, and from another the sum of $3,000, without security other than the individual indorsement of Joseph Gawley.

The machinery company was in straightened circumstances long prior to its settlement with the appellant bank, a condition which the officers of the bank knew, although they may not have known its exact situation. It was found by the trial court, and we think the evidence justifies the finding, that the machinery company was, at the time of the settlement, wholly insolvent, that its assets did not exceed $20,000, while its liabilities exceeded $100,000. Later on, actions were started against the machinery company by certain of its creditors, in one of which a default judgment was entered. Still later, and on October 27, 1909, with knowledge of the pendency of these actions, the appellant bank caused its bill of sale to be recorded in the office of the collector of customs, where the vessel was enrolled, and thereupon took possession of the vessel. On January 19, 1910,

the machinery company was adjudged a bankrupt, and the respondent J. D. Benner was appointed trustee in bankruptcy of its property. On April 7, 1910, the bank began foreclosure proceedings on its bill of sale, alleging that the same was intended as a mortgage to secure the payment of the note of the machinery company, naming the respondent Benner, among others, as a party defendant to the action. No service of process, however, was made upon Benner, and the action went to judgment and order of sale against the other parties defendant. At the sale the vessel was purchased by the appellant for the sum of $5,000. The costs of the foreclosure proceedings were $719.10.

The court found that the reasonable value of the vessel to be $5,500, and further found that the appellant bank on taking possession of the vessel paid lienable claims to which it was subject in favor of certain employees and persons furnishing materials and making repairs thereon, aggregating $1,094.07. This sum the court deducted from the value of the vessel as it found that value to be, and entered a judgment in favor of the trustee in bankruptcy for the remainder, but refused, contrary to the request of the appellant, to allow a deduction for the costs of the foreclosure proceedings.

The statutes of the United States relating to the recording of vessels enrolled under the laws of the United States reads as follows:

"Sec. 4192. No bill of sale, mortgage, hypothecation, or conveyance of any vessel, or part of any vessel, of the United States, shall be valid against any person other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof, unless such bill of sale, mortgage, hypothecation, or conveyance is recorded in the office of the collector of the customs where such vessel is registered or enrolled. The lien by bottomry on any vessel, created during her voyage, by a loan of money or materials necessary to repair or enable her to prosecute a voyage, shall not, however, lose its priority, or be in any way affected by the provisions of this section." U. S. Rev. Statutes, § 4192.

The bankruptcy act contains the following sections:

"Sec. 60.  A person shall be deemed to have given a preference, if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required." Remington, Bankruptcy, p. 1780.

"Sec. 67.  a Claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt shall not be liens against his estate.  b Whenever a creditor is prevented from enforcing his rights as against a lien created, or attempted to be created, by his debtor, who afterwards becomes a bankrupt, the trustee of the estate of such bankrupt shall be subrogated to and may enforce such rights of such creditors for the benefit of the estate." Remington, Bankruptcy, p. 1783.

From an examination of the dates above given, it will be observed that the bill of sale, which is thought to have created a voidable preference in favor of the appellant bank over other creditors of the bankrupt, was executed on July 9, 1909, and recorded with the collector of customs, where the vessel was enrolled, on October 27, 1909; that the vendor in the bill of sale was adjudged a bankrupt on January 19, 1910, and that four months did not elapse between the date of recording the transfer and the adjudication of bankruptcy.

It is the contention of the appellant that the instrument under which it claims is not such an instrument as the bankruptcy act requires to be recorded; and since it was executed more than four months prior to the filing of the petition in bankruptcy, it was not avoided by that proceeding. In support of its contention, the appellant suggests two principal

reasons. The first is that the section from the Revised Statutes, above quoted, does not require an instrument to be recorded in order to be valid against general creditors of the vendor named in the instrument, but requires recording only as against creditors who have acquired some form of lien upon the property without notice of the lien created by the unrecorded instrument; and the conclusion is drawn therefrom that, since the creditors represented by the trustee in bankruptcy in the present case are general creditors of the bankrupt, having no specific lien upon the property included within its bill of sale, they are not protected by the section of the bankruptcy act which avoids a transfer of property not recorded within four months prior to the institution of bankruptcy proceedings against the vendor therein.

A number of cases are cited as supporting this construction of the recording act, among which are *Hill v. Golden Gate,* Fed. Cas. No. 6,492; *White's Bank v. Smith,* 7 Wall. 646; *Aldrich v. Aetna Co.,* 8 Wall. 492, and *The J. E. Rumbell,* 148 U. S. 1; but a careful perusal of them has not convinced us they are in point upon the question here suggested. Certainly they do not determine the question directly, and the analogy is not sufficiently close to enable us to say that a contrary conclusion is not permissible. Treating the question as one of first impression, we cannot adopt the construction contended for as a correct construction of the statute. It will be observed that the statute is somewhat broad in its terms. The language of the act, in so far as it is applicable to the present case, is that no bill of sale or mortgage shall be valid against any person other than the grantor or persons having actual notice thereof unless recorded in the office of the collector of customs where the vessel is enrolled. The term "any person" does not mean, of course, a stranger to the transfer, or an individual who has no interest at all in the property of vendor. These are not affected by the disposition made of the vendor's property. But we think it broad enough to include the general creditors of the vendor,

and especially those who, like certain of the creditors of the vendor in the present instance, have, subsequent to the execution of the bill of sale, but prior to its recording and in ignorance thereof, advanced large sums to the vendor on the faith of its representations that the title to the property was unchanged and clear of incumbrances. One of the purposes of the recording acts is the avoidance of secret liens and the consequent frauds attendant upon them. To that end such statutes are regarded as remedial, and are to be liberally construed so as to attain the object intended. So with the statute in question here, since its language is broad enough to permit of it, the court will give it that construction which will prevent a vendor or mortgagor from pledging his property to secure one obligation and then using it as an unencumbered asset to incur others. So construing it, we hold that an unrecorded bill of sale is invalid as against a creditor of the vendor who seeks to sequester the property to the satisfaction of the obligations due him.

But it is said that the creditors here are not seeking to sequester the property to the satisfaction of their debts; that the title to the property is in the trustee in bankruptcy, who took it from the bankrupt, the vendor in the bill of sale; that the trustee's title is no better than the bankrupt's, and since it could not avoid the conveyance, the trustee cannot. But the trustee not only holds the legal title to the bankrupt's estate, but he represents the creditors of the bankrupt also. Such rights as they possessed against the claimants and holders of the bankrupt's estate, he possesses; and he can avoid any transfer or conveyance of the property which they could have avoided. In other words, the bankruptcy proceedings are in themselves in effect an attachment and sequestration of the property of the bankrupt for the benefit of his creditors, and the trustee thereof has plenary power to take all such steps as are necessary to subject the bankrupt's property to the satisfaction of his obligations. Bankruptcy Act, § 67. c; *Mueller v. Nugent,* 184 U. S. 1; *Bank*

*v. Sherman,* 101 U. S. 403; *Bryan v. Bernheimer,* 181 U. S. 188; *In re Pekin Plow Co.,* 112 Fed. 308; *In re Thorp,* 130 Fed. 371.

The second reason given in support of the contention is that, since the bill of sale is valid between the parties and as to persons having actual notice thereof without recording, it is not such an instrument as the bankruptcy act requires to be recorded. In other words, it is contended that no instrument is required to be recorded by the bankruptcy act in order to be valid, unless such instrument is invalid without recording as against all persons. We cannot accept this construction of the statute. It will be remembered that § 60 of the bankruptcy act as originally enacted did not contain the last sentence now in the section above quoted. This was added by the amendment of 1903, and had as its purpose the prevention of giving secret preferences, made possible under the law as it was originally enacted, by withholding from record instruments creating liens. It is plain that if the appellant's construction of the statute is adopted, the amendment is rendered nugatory, as no statute of the United States or of any state, in so far as we are aware, requires instruments conveying or creating liens upon property to be recorded in order to be valid as against all persons. Usually, and universally in so far as our examination goes, they are valid between the parties and some classes of persons having actual notice, without recording. These facts were known at the time the amendment was enacted, and it will hardly do to say that it was the purpose of Congress to do an idle thing. There is no necessity that requires the construction contended for. The act can be held operative as to those persons whom the recording statutes favor without doing violence to any of its terms; and since creditors are persons against whom unrecorded transfers and mortgages are void unless recorded under the section of the Revised Statutes above quoted, we hold, in applying the principle to the case before us, that the failure of the appellant

to record its lien more than four months prior to the filing of the petition in bankruptcy against its vendor destroyed the preference given thereby, and subjected the property to distribution among the creditors of the bankrupt's estate.

Our attention has been called to no adjudicated case where the bankruptcy act has been construed with reference to the Federal recording act above quoted. It has been construed, however, by the United States circuit courts and circuit courts of appeal, in numerous cases with reference to the recording acts of the various states. The diligence of counsel has demonstrated that these decisions have not been entirely uniform, but we think the trend of authority is to support the conclusion we have reached. *Loeser v. Savings Deposit Bank & Trust Co.*, 148 Fed. 975; *Mattley v. Giesler*, 187 Fed. 970; *In re Beckhaus*, 177 Fed. 141; *First Nat. Bank v. Connett*, 142 Fed. 33; *English v. Ross*, 140 Fed. 630; *In re Pekin Plow Co., supra; In re Montague*, 143 Fed. 428.

We think the transfer void for another reason. It will be remembered that the Gawley Foundry & Machine Works is a domestic corporation, and was wholly insolvent at the time it made and delivered the bill of sale in question to the appellant bank. In this state it is the rule that a domestic corporation cannot, after insolvency, prefer its creditors; but, on the contrary, its property is from thenceforth regarded as a trust fund for the benefit of all its creditors, and any transfers or mortgages thereof after insolvency, which have the effect of preferring one creditor over another, are void. *Thompson v. Huron Lum. Co.*, 4 Wash. 600, 30 Pac. 741, 31 Pac. 25; *Conover v. Hull*, 10 Wash. 673, 39 Pac. 166, 45 Am. St. 810; *Allen v. Stallcup*, 13 Wash. 631, 43 Pac. 884; *Compton v. Schwabacher Bros. & Co.*, 15 Wash. 306, 46 Pac. 338; *Biddle Purchasing Co. v. Port Townsend Steel, W. & Nail Co.*, 16 Wash. 681, 48 Pac. 407; *State ex rel. Strohl v. Superior Court*, 20 Wash. 545, 56 Pac. 35, 45 L. R. A. 177; *Tacoma Ledger Co. v. Western Home Bldg. Assn.*, 37

Wash. 467, 79 Pac. 992; *Carstens & Earles v. Hofius*, 44 Wash. 456, 87 Pac. 631; *Nixen v. Hendy Machine Works*, 51 Wash. 419, 99 Pac. 11.

By § 67 of the bankruptcy act it is provided that claims which for want of record or "for other reasons" would not have been valid as against the claims of creditors of the bankrupt shall not be liens against his estate. It is plain, therefore, that under the laws of this state, as they are administered by our courts, this transfer would have been void although recorded within the statutory period. Again, our recording acts make void any transfer of personal property as against existing creditors, where the property is left in the possession of the vendor, unless the transfer be recorded within ten days after its execution. Rem. & Bal. Code, § 5291. So a mortgage of personal property is void as against creditors of the mortgagor or subsequent purchasers of the property unless recorded in the manner required by law. Id., § 3660. This rule of law and these statutes, it seems to us, afford "other reasons" for declaring the lien of the appellant invalid within the meaning of the bankruptcy act, even though we were to conclude that the transfer was valid under the recording acts.

The appellant complains that the court erred in failing to allow it its costs expended in foreclosing its lien, and in allowing a recovery for the value of the vessel in excess of the price for which it sold at public sale under the foreclosure proceedings. But we find no error in either of the rulings.

The judgment is affirmed.

CROW, C. J., MAIN, MORRIS, and CHADWICK, JJ., concur.