[No. 11134.   Department Two.   July 8, 1913.]

### J. M. JORGUSON, *Appellant*, v. APEX GOLD MINES COMPANY, *Respondent*.[1]

CORPORATIONS—DIVIDENDS—PAYMENT FROM CAPITAL. An agreement by a corporation, in consideration of the sale of stock, to guarantee the payment of $1,000 in dividends within eighteen months, is void, where there were no net profits, since to enforce it would contravene public policy and violate Rem. & Bal. Code, § 3697, making it unlawful to declare dividends except out of net profits or to reduce its capital stock by paying any portion of it to its stockholders.

SAME—GUARANTEEING DIVIDENDS. A bond by a corporation guaranteeing dividends in a sum equal to the amount paid for the stock, makes the stock subscription a fictitious one and violates Const., art. 12, § 6, prohibiting the issue of stock except to *bona fide* holders for full value.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered March 22, 1913, upon findings in favor of the defendant, dismissing an action on contract, after a hearing before the court. Affirmed.

*Milo A. Root*, for appellant.

*Frank A. Steele* and *Harrison Bostwick*, for respondent.

MORRIS, J.—On March 22, 1909, appellant purchased from the respondent two thousand shares of its capital stock for the sum of $1,000. As a part of said transaction, it was agreed that the corporation should guarantee that the dividends upon such stock would amount to $1,000 within the next eighteen months, and that the corporation would pay to the plaintiff the sum of $1,000 as dividends within that time. Pursuant to this agreement, the respondent, acting under a resolution unanimously adopted by its stockholders, executed and delivered to appellant a bond, the condition of which was that if, within the period of eighteen months, the corporation should pay to appellant, his heirs, personal rep-

[1] Reported in 133 Pac. 465.

resentatives, or assigns, the sum of $1,000 in cash as dividends on the stock so purchased, then the obligation should be void; otherwise it should remain in full force and effect and the appellant should, in addition to holding his shares of stock as fully paid up, be entitled to receive from the corporation the sum of $1,000 less any amount which he should have received in dividends on the stock during the time. The eighteen months having expired, and the corporation having failed to pay to the appellant any sum in dividends upon his stock, and having otherwise failed to comply with the obligations of its bond, appellant brought this action upon the bond in which he sought to recover from the corporation the sum of $1,000. Upon a hearing it was found by the court that, since the execution of the bond, the net earnings of the corporation had not been sufficient to declare any dividends upon its capital stock, and that no dividend had been so declared. The court thereupon dismissed the action, and the case is brought here on appeal.

Upon these facts we think the judgment must be sustained. The bond sued upon obligated the company to pay $1,000 in dividends within eighteen months, or if such sum be not paid as dividends, the same should be paid in any event. The courts have uniformly held that dividends can be declared and paid only out of the profits or surplus earnings of the corporation.

"The rule of law that requires corporations to preserve their capital intact is alone sufficient to prevent the corporation from paying dividends except out of profits." 5 Thompson, Corporations (2d ed.), § 5305.

It being established in this case that there were no profits out of which this dividend could be declared, it follows that, if the bond be enforced against the corporation, payment must be made out of its capital, which the law will not permit, upon the ground that any contract whereby a corporation seeks to diminish its capital stock, except in some way permissible by statute, contravenes public policy and is un-

enforceable. Rem. & Bal. Code, § 3697 (P. C. 405 § 41),
contains provisions that it shall not be lawful to declare divi-
dends except from the net profits arising from the business
of the corporation; nor in any way pay to stockholders any
part of the capital stock or reduce the same, except in the
manner thereafter provided. Under this section it has been
held that a corporation could not reduce its capital stock by
paying any portion of it to the stockholders. *Tait v. Pigott*,
32 Wash. 344, 73 Pac. 364; *Tait v. Pigott*, 38 Wash. 59, 80
Pac. 172; *Tacoma Ledger Co. v. Western Home Bldg. Ass'n*,
37 Wash. 467, 79 Pac. 992.

Counsel for appellant contends this section has no appli-
cation, and that the only question to be determined is whether
or not the contract is *ultra vires*. We think, however, it is
clear that, since there are no profits nor surplus out of which
this dividend can be paid, payment must be made, if at all,
from the capital of the corporation, which is a direct viola-
tion of the statute. In *Lockhart v. Van Alstyne*, 31 Mich.
76, 18 Am. Rep. 156, a corporation guaranteed a semi-
annual dividend of five per cent upon its preferred stock,
and it was held that, when it appeared there were no profits
from which the dividends could be made, the guarantee be-
came wholly inoperative for want of something to which it
was applicable, and was void as opposed to public policy, and
that the extent to which the law would permit a corporation
to go in garanteeing dividends would be to guarantee the
payment when there were profits to pay them, or if profits
were not realized to the necessary amount in any one year, the
stockholder would be entitled when they were realized to have
all arrears paid up. In *Pittsburg & C. R. Co. v. County of
Allegheny*, 63 Pa. St. 126, the railroad company guaranteed
the payment of interest on county bonds given to it as a
subsidy, and it was held that the payment of such interest
out of the capital before earnings were made was within the
prohibition of the charter against paying dividends out of
the capital. Similar rulings have been made in *Bingham v.*

*Marion Trust Co.*, 27 Ind. App. 247, 61 N. E. 29; *Paines-ville & H. R. Co. v. King*, 17 Ohio St. 534; *Ohio College of Dental Surgery v. Rosenthal*, 45 Ohio St. 183, 12 N. E. 665; *Troy & Boston R. Co. v. Tibbits*, 18 Barb. 297; *Memphis Grain and Elevator Co. v. Memphis & C. R. Co.* (Tenn), 5 S. W. 52.

We have found one case where the facts are so similar that it would be useless to attempt to distinguish them: *Smith v. Alabama Fruit Growing & Winery Ass'n*, 123 Ala. 538, 26 South. 232. The corporation there sold to the plaintiff $1,500 worth of its capital stock, and executed its bond with sureties that it would return the $1,500 in four semi-annual dividends. These dividends were not paid, and action was brought upon the bond. A demurrer was interposed to the complaint upon the grounds, (1) that the contract was illegal and void in that it undertook to indemnify plaintiffs against loss for a purchase of stock, making issue thereof fictitious and without consideration; (2) that the contract was in violation of the constitution prohibiting corporations to issue stock or any bond for the payment of money except for money, labor done, or property actually received, and declaring void all fictitious increase of stock; (3) that it appeared from the complaint that the contract sued upon was illegal, without consideration, and void. This demurrer was sustained, and on appeal the court, in affirming the judgment, said:

"It requires little, if indeed anything, beyond this statement of the case to demonstrate the correctness of the city court's ruling. The contract sued on is, of course, executory, and its enforcement is sought in this action in furtherance and completion and consummation of a fictitious subscription to the capital stock of a corporation, a transaction prohibited by the organic law of the land and frequently denounced as vicious and incapable of conferring or passing any rights. The jurisdiction of our courts cannot be invoked to enforcement and execution of such undertakings. In substance the contract is for the payment back by the

corporation to the subscriber for its stock of the money he subscribed, thus leaving the issuance of the shares to him wholly unsupported by any consideration, fictitious and void; and the action upon the contract is an invocation of the powers of the courts to the accomplishment of this end expressly forbidden by the constitution of the state. If this could be done an easy road would be opened to the utter emasculation of this most just and necessary provision of the constitution by evasions so palpable as to be little, if at all, short of avowed and direct attempts to defy and override it."

We have a like provision in our constitution, found in art. 12, § 6:

"Corporations shall not issue stock, except to *bona fide* subscribers therefor, or their assignees; nor shall any corporation issue any bond or other obligation for the payment of money, except for money or property received or labor done. The stock of corporations shall not be increased, except in pursuance of a general law, nor shall any law authorize the increase of stock, without the consent of the person or persons holding the larger amount in value of the stock, nor without due notice of the proposed increase having been previously given in such a manner as may be prescribed by law. All fictitious increase of stock or indebtedness shall be void."

The bond in suit provides that, in case the full sum of $1,000 be not paid as dividends within eighteen months, the purchaser of the stock shall, in addition to holding his stock as fully paid, be entitled to receive from the corporation $1,000 in cash less any amount received in dividends. This would mean, as said in the Alabama case, the payment back to the stockholder of the money he paid for his stock, while permitting him to retain his stock as fully paid, thus leaving the issuance of the stock wholly unsupported by any consideration, a direct conflict with the constitutional provision. See, also, 5 Thompson, Corporations (2d ed.), § 5354; 2 Cook, Corporations (6th ed.), § 544.

The judgment is affirmed.

ELLIS, FULLERTON, and MAIN, JJ., concur.