## SIOUX FALLS TRUST & SAVINGS BANK et al. v. HOMER W. JOHNSON CO. et al.

District Court, D. Iowa. April 27, 1927.

1. **Trusts ⬡359(2)—Action may be brought in equity in behalf of insolvent bank to impress funds withdrawn by depositor with trust.**

Action in behalf of insolvent bank to impress a trust on certain funds withdrawn by depositor may be brought in equity, with authority in court, in case proof showed money should be impressed with such trust, to make order requiring it to be turned over in same manner as if other specific assets of bank were involved.

2. **Trusts ⬡63¾—Sum withdrawn by depositor shortly before bank closed as legitimate banking transaction cannot be imposed with trust in favor of bank.**

Where depositor, during time immediately preceding bank's liquidation, continued regular business therewith and made deposits of approximately $13,000 while bank was open and presumably doing a legitimate business, with no knowledge that bank was not entirely solvent, $7,000 withdrawn by depositor shortly before bank closed as a legitimate banking transaction in an ordinary way cannot be impressed with a trust in action in behalf of such insolvent bank.

3. **Trusts ⬡349—Proceeding to impress trust on funds withdrawn by depositor before bank's insolvency must fail when funds were used in improvement of property subsequently transferred to bank.**

Where money withdrawn by depositor shortly before closing of insolvent bank was used in payment of improvement of property subse-

quently transferred to bank during liquidation, proceeding in equity to impress a trust on such fund must fail, in that it would be necessary to follow such funds, which at time of action constituted property already in bank's possession.

In Equity. Action by the Sioux Falls Trust & Savings Bank and another against the Homer W. Johnson Company and others. Judgment of dismissal.

F. M. Scoblic, of Tyndall, S. D., and E. E. Wagner, of Mitchell, S. D., for plaintiffs.

Shull, Stilwill, Shull & Wadden, of Sioux City, Iowa, for defendants.

ELLIOTT, District Judge. I have reviewed the record in re Sioux Falls Trust & Savings Bank and Fred R. Smith, as Superintendent, etc., Plaintiffs, v. Homer W. Johnson Co. et al., Defendants.

[1] The first question that is presented is the objection by counsel for defendants to this proceeding in equity, urging that the case should be and is one at law. The authorities seem to recognize two methods of procedure in this class of cases. Ordinarily an action brought by the officer in charge of a bank for purposes of liquidation is to recover back notes or other property of the bank that has been given to secure an existing indebtedness of the bank, and because of the preference the specific property is sought to be recovered. The second recognized method of procedure seems to be an action for conversion of the funds belonging to the bank where the same is money. The latter is an action at law.

Plaintiff urges, however, that this proceeding is an action, the purpose and object of which is to impress a trust upon these funds in the sum of $7,000 in the hands of the defendants, and for judgment for the $7,000, and interest thereon. Both plaintiff and defendant have come into court and tried the case upon that theory, without objection until the matter is finally briefed. I am of the opinion that plaintiff, under the facts alleged in the complaint, had the right to bring this action for the purpose of impressing the $7,000 with a trust, and if the proof showed the money in possession of the defendants, impressed with a trust, I know of no reason why the court could not make an order requiring it to be turned over to the plaintiffs in the same manner and to the same effect as if other specific assets of the bank were involved.

The record is very short. There is practically no dispute in it. The only difficulty is that counsel do not entirely agree upon the reasonable inferences to be drawn from the facts as they appear, or to the application of the provisions of the statutes of the state of South Dakota to the situation that is, without dispute, presented, upon which to determine the rights of the respective parties.

It is conceded that the said bank prior to the 14th day of January, 1924, was a bank duly organized under the laws of the state of South Dakota, and doing a large banking business at Sioux Falls, S. D.; that for long prior to that date its total daily balance sheets were in a sum largely in excess of $5,000,000; that a few days prior to the 14th day of January, 1924, the Sioux Falls National Bank, located just across the street, closed its doors, and was taken over by the Comptroller of the Currency for liquidation. Banks for months in this particular part of the country had been having trouble to keep their cash reserves intact. It is a matter of common information, such as is suggested by the testimony, and there is no controversy upon the fact that the conditions existing in financial and banking interests were exceptional; that a period of deflation had begun that eventually carried with it the practical wiping out of all land values and the destruction of the savings and fortunes of banks and farmers and the reduction in values of every financial interest.

The closing of the bank across the street from the plaintiff bank naturally produced a nervous, uneasy, excited state of mind on the part of depositors, and withdrawals were made from the plaintiff bank, and from every other bank, and there is nothing in this record to justify a conclusion that the officers of this bank believed that the end had come, and that the bank would have to close, or that they contemplated either the necessity or possibility of it, until the 14th of January, the date on which it was turned over to the banking department. They had succeeded in cashing large amounts of their bills receivable, and there is not any question but that they believed they were going to be able to weather the storm and save the institution, and with it the deposits in the bank for the benefit of its customers.

In the meantime, and before the closing of the bank, and while it was an institution doing that legitimate business for which it was authorized under the laws of the state of South Dakota, these defendants, who had the same name but who had no interest in the bank and knew no more about the condition of the bank than any other depositor, having confidence in it, however, continued to do business in the usual way, and it appears that on the 12th day of January, 1924, the defendant, Homer W. Johnson, Jr., went into the bank and deposited the sum of $2,305.61,

which represented the proceeds of loans that had been made upon real estate, and cream checks and other items making the deposit $2,382.96. The record shows without dispute that the Homer W. Johnson Company is a partnership consisting of the widow and children of Homer W. Johnson, deceased. Under this name deceased was engaged in his lifetime in real estate and farm loans, and after his death the widow and children, defendants herein, continued to conduct the same business under the same name. Their individual property consisted almost wholly of the ranch in Hutchinson and Turner counties, known as "Elm Springs Ranch," an undivided one-third of which was owned by Frank H. Johnson, president of the plaintiff bank, and the remainder belonged to the defendants. This land had been incumbered by a blanket purchase-money mortgage and there was also other indebtedness incurred in the operation of the ranch, etc.

After the death of said Homer W. Johnson, the said ranch was looked after by Frank H. Johnson, or the members of said Homer W. Johnson's family, and an account was carried in the plaintiff bank, known as "Johnson's New Elm Springs," against which the different members of either family were accustomed to check as bills came in from the ranch. Prior to the closing of the plaintiff bank the said Homer W. Johnson family moved from Sioux Falls back to Sioux City, with an agreement that they were to take exclusive charge of the ranch, and that Frank H. Johnson would conduct the negotiations for new, separate loans, taking up the blanket mortgage upon the ranch which matured January 1, 1924, and that immediately after the separate loans were negotiated the New Elm Springs account would be closed and the defendants would take entire charge of the ranch. These mortgage transactions, it appears from the record, were closed, and Homer W. Johnson, Jr., received from the Federal Land Bank of Omaha $2,305.61, representing the balance of the proceeds of these separate loans over and above the blanket mortgage, and thereupon, on the 12th day of January, 1924, deposited the same with cream checks and other items amounting in the whole to $2,382.96, to the credit of the Homer W. Johnson Company in said plaintiff bank, as above set forth.

I find nothing in this record that can reasonably be interpreted as questioning the good faith of these defendants in their transactions with the plaintiff bank. The record discloses that the plaintiff bank was in practically the same condition when it was taken over by the bank examiner on the 14th day of January as it had been for the preceding days of that year. The bank had been and was, up to the time it was taken over, open for business, and the record shows that these defendants deposited in the bank more than $9,000 after January 1st and before January 14th, and on January 2d, an additional sum of $1,624 of their own moneys into the Johnson's New Elm Springs account. These three deposits make a total of $13,081.74, that was deposited by the defendants in the plaintiff bank after the 1st day of January and before it was taken over by the banking department, all in the usual method, nothing out of the ordinary, and checks were being drawn upon the bank in the usual way. It appears further that during this time other items had been advanced by the defendants for the account of the ranch, and it had been agreed that Frank H. Johnson would pay the sum of $2,200 to make up his share of the amount necessary to pay the expense incurred upon the said ranch.

Carrying out this agreement, the defendant Homer W. Johnson, Jr., on January 12, 1924, drew a check for $1,500 upon the Homer W. Johnson Company account, deposited the sum above named to the Johnson's New Elm Springs account, and drew a check against that account of $3,300, making a total of $4,800, which with the $2,200 agreed to be paid by Frank H. Johnson, amounted to $7,000. It appears that prior to the death of Homer W. Johnson, Sr., he had carried an account in the Chemical National Bank of New York, and when the defendants moved to Sioux City it was thought best that all of their interests should be placed in this particular account in New York, and they so informed Frank H. Johnson on the 12th day of January. Frank H. Johnson, to carry out his part of the agreement, thereupon drew his checks upon the accounts known as "Big Three" account, "Dakota E. & J." "Homestead Realty Company," and "Truck Fund," carried by him in the bank, and which it is conceded belonged to him personally, for the said sum of $2,200 and in compliance with the request of said Homer W. Johnson, Jr., thereafter remitted the said $7,000 by wire to the Chemical National Bank in New York, thus closing the agreement.

There is nothing in this record upon which I can base a finding that Homer W. Johnson, Jr., or any of the defendants, had any knowledge or information with reference to the condition of the plaintiff bank, on or prior to the date of this transaction, that would lead them to question the responsibility of the

bank. I am just as satisfied that Frank H. Johnson at that time believed in his ability to meet the conditions that existed and tide his bank over the demands caused by the failure of the bank across the street, and other banks in the country. It is conceded that Frank H. Johnson did not overdraw any account, that there were balances left in each of them, and it is further conceded that the defendants took this money and actually applied it in the payment of the expenses that had theretofore been incurred in the care and management of the said ranch thus jointly owned by Frank H. Johnson and the defendants. It is conceded that this was all done while the bank was open and doing business over the counter, restricted in a way, and yet, no evidence of thought upon the part of Frank H. Johnson or of Homer Johnson, that any preference was being given the defendants or either of them. Simply the closing of a transaction in a legitimate way in the transaction by the bank of its ordinary business before it had been taken over by the bank examiner for liquidation.

Plaintiff seeks to impress this $7,000 with a trust in behalf of the depositors of the bank upon the theory that it is a preference, asserting that the officers of the plaintiff corporation, upon its insolvency, became trustees for creditors. Plaintiff urges that the act of the officers of the bank in paying this $7,000 to these defendants was void under the South Dakota statutes and decisions, relying upon the principle announced in re Adams v. Deyette, 5 S. D. 418, 59 N. W. 214, 49 Am. St. Rep. 887, and subsequent decisions recognizing the principles announced in that case. I have examined the various cases cited by the plaintiff, and I fail to find a single case where it does not appear either that the corporation had ceased to function, or the preference was the deposit of notes or other security for an existing debt of the bank, with an intent and purpose upon the part of the officers of the bank to prefer the person to whom such property was given. In neither of the cases cited by plaintiff did the transaction involve the performance of a duty by the officer in the ordinary transactions of the corporation.

This plaintiff was a banking corporation. It was organized under the laws of the state; it was supervised, regulated, and controlled by the state banking department; it was held out as an institution with which citizens could deal in banking transactions, and the record discloses that these defendants did, with faith in the plaintiff bank, deposit in said bank more than $13,000 after the 1st of January, 1924, and that the $7,000 in question here was checked out in the usual course of business, for the sole and only purpose of getting the money of the defendants together in their New York account, and for the purpose of paying the expense that had been incurred upon this land jointly owned by them and Frank H. Johnson, pursuant to the agreement that had theretofore been entered into. There is no pretense here that this bank had ceased to do business as a bank at the time of these transactions, or that the officers of the bank had determined or contemplated the necessity of turning the bank over to the bank examiner for liquidation; no claim that any proceeding had been instituted against the plaintiff bank, or any steps taken or any thought given to the winding up of its affairs at the time of the transactions in question.

In this connection it may be observed in re Adams v. Deyette, supra, the defendant, in failing circumstances, borrowed money with which to purchase shares in itself and gave to the person from whom the loan was made a preference over all other creditors by confessing judgments when insolvent in favor of the persons loaning the money, with actual knowledge of the purpose for which the same was borrowed. This, of course, constituted fraud upon the bona fide creditors. Furber v. Williams-Flower Co. et al., 21 S. D. 228, 111 N. W. 548, 8 L. R. A. (N. S.) 1259, 15 Ann. Cas. 1216, involved the transfer by an insolvent corporation of its property to one person with an understanding that certain creditors should be preferred, and that was held to be fraudulent without reference to the want of knowledge of the preferred creditors as to the character of the transfer. State of South Dakota v. Stewart, 30 S. D. 585, 139 N. W. 371, involving a construction of chapter 222, Laws of 1909, reviews the banking laws making it an offense for officers and directors of banks to permit shareholders to become indebted to it at one time in excess of 50% of its paid-up capital, and involves the sufficiency of the allegations of the indictment to bring it within the terms of this statute.

Roberts v. Hill (C. C.) 24 F. 571, cited by plaintiff, was an action to set aside the transfer of property by a bank to a creditor to avoid paying him the amount due him and thus postpone the failure of the bank, and it is there held that it is none the less fraudulent and void because of that fact. In re Ball v. German Bank of Carroll County, Iowa (C. C. A.) 187 F. 750, it is disclosed that there existed a custom between defendant bank and the national bank in the same town for each to cash checks drawn on the other during the day's business, and after banking hours to

take an account of such payments, and for the bank against which the balance was found to give a due bill for the amount, which was taken up on the next day by cash or draft, and the checks were then surrendered for debit against the drawers. Two drafts given defendant in settlement of said balances on successive days having been dishonored, the defendant's president called on the cashier of the national bank after banking hours on Saturday and requested collateral to cover the amount, which was given, amounting to $5,500. The national bank was then insolvent and did not again open its doors, and that it could not do so was then known to the cashier.

It cannot be urged that this was a transaction in the ordinary course of business. It was in direct violation of the custom above stated. There had been dishonor for two successive days. The bank had been closed, not to open again, and it was there held that whatever other remedy it might have had, defendant bank by demanding collateral elected to affirm the relation of debtor and creditor between the two banks, and that the transfer of the collateral by the cashier of the national bank was at least in contemplation of the act of insolvency, with a view of preferring the defendant as a creditor. Certainly there is no principle announced in this case applicable to the situation disclosed by the record here.

And so we may go through the cases cited and in no instance can I find an intimation that a bank, authorized to do business, while it continues in the legitimate transaction of that business, is authorized specifically or by implication to graft every citizen that comes within its doors by receiving every dollar it is possible for it to get, and if perchance a small part of that is checked out in the regular transaction of business before the bank closes, then an action lies to recover back the sum so received by the depositor. If this is properly an action in equity, no such interpretation of the statute of this state can be enforced. It is repugnant to the instincts of honesty and common decency to say that the state can authorize a bank to open its doors for the transaction of a banking business, that it will supervise, regulate, and control the transactions of that institution, and in effect say that as long as it is permitted to continue that business it is a continuing invitation for depositors to place their money there for the purpose of checking and the transaction of a banking business in the usual way, and then to say that, notwithstanding this, a man may walk into that bank in the best of good faith and deposit, as did the defendants here, more than $13,000, and notwithstanding the fact that in the transaction between these defendants and Frank H. Johnson, not a single account was overdrawn, the money was there belonging to the parties drawing the checks, the transfer was made in the usual way, in good faith, and notwithstanding that the bank had had the benefit of the deposit of this large amount, with no appreciable change upon the face of the record in the position of the bank, except an increased demand for cash on the part of the depositors, the plaintiff here may maintain an action to impress the amount that the defendants, under those circumstances, legitimately drew from those deposits, with a trust and recover the amount so drawn by the defendants, keeping the balance of the deposit made by the defendants, and complaining only that by a legitimate banking transaction, with no thought or intent to prefer a creditor, checks were drawn, and the balances due these defendants in the bank were legitimately reduced. No such purpose or intent should be, nor in my judgment can be, reasonably attributed as the intent and purpose of the Legislature in the enactment of the South Dakota statute relied upon by plaintiff in this action. There is an entire absence of fraud, or intent to prefer, and, in my judgment, both must concur to present facts actionable under this statute.

[2] This case has proceeded on the equity side of this court. It is undisputed that these defendants deposited $13,000 in this bank after the 1st of January, 1924, while its doors were open and presumably doing a legitimate business, with no knowledge on the part of the defendants or any of them that the bank was not entirely solvent. The record discloses no purpose or intent on the part of either of the defendants, nor is there any shown on the part of Frank H. Johnson, who had charge of the transaction for the bank, to either defraud any one, or to prefer the defendants or either of them. The $7,000 in question here was drawn from the bank as a legitimate banking transaction in the ordinary way. If the contention of the plaintiff here is true, the bank was in no better condition at any time any of these deposits were made than when the bank was turned over to the department for liquidation. If the bank was insolvent, then the officers, in accepting deposits, were not only doing a wrong, but were violating a statute, and such act was criminal. If this $13,000 was received by the plaintiff bank under those circumstances, a court of equity will not intervene to enable the bank to increase the result of its wrongdoing in the sum of the amounts legitimately checked out

of such account, and, in my judgment, it is just as clear that the plaintiff ought to have, and has, no legal remedy under the circumstances disclosed by this record.

Banks under our system are a necessity. The state, by virtue of its constitutional provisions and laws duly enacted, has assumed the duty of not only authorizing such institutions, but of supervising, regulating, and controlling them. The statute relied upon by plaintiff, in my judgment, has no application whatever to a bank authorized and permitted to do a legitimate banking business so long as its transactions are of that character. Its transactions are illegitimate when they are unusual, when they are not in the usual course, when the evident intent and purpose is to give of the property and tangible assets of the bank to a creditor, preferring that creditor to all others.

[3] As above stated, this is a proceeding in equity to impress a trust upon $7,000 in the hands of the defendants. For plaintiffs to prevail they must not only show that this money went into the hands of the defendants impressed with a trust, but either that they have it and should be required to turn it over to the plaintiff, or that it has gone into specific property, in which event plaintiff would have the right to follow it into such property. It may. be urged in this case that the proof that the money was withdrawn from the bank by the defendants is prima facie evidence of the fact that they still have it. While there may be some doubt upon that, the record does not stop with this proof on the part of the plaintiff. The undisputed proof is that this money was used in the payment of expenses incurred in the management and improvement of the ranch above referred to, and that it was so used. The proof, therefore, takes the money out of the possession of the defendants and places it into this ranch. property, and the proof does not stop there. It is further shown that, after taking possession of the bank by the department for liquidation, Frank H. Johnson and the defendants deeded lands belonging to said ranch to the plaintiff free from the claim for the expense and improvements theretofore paid with the money in controversy, and at the time of the commencement of this action the title to this property and the possession of the property was in the plaintiff bank, and therefore plaintiffs' proof fails upon the theory upon which the case was tried.

You may prepare proper judgment of dismissal of plaintiffs' complaint herein, with an exception to the plaintiffs.